CARL DE MARCO, PLAINTIFF-APPELLANT, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN, A BODY POLITIC OF THE STATE OF NEW JERSEY, AND THE COUNTY OF BERGEN, IN THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued January 3, 1956—Decided March 12, 1956.

138

*Mr. Herman W. Kapp* argued the cause for the appellant (*Kapp Brothers*, by *Mr. Leon W. Kapp*, and *Mr. Albert S. Gross*, attorney).

*Mr. Milton T. Lasher*, Bergen County Counsel, argued the cause for the respondents.

The opinion of the court was delivered by

JACOBS, J. In an opinion reported at 36 *N. J. Super.* 382 (*Law Div.* 1955), Judge Waesche held that the plaintiff, a Bergen County detective, was not entitled to recover salary from October 9, 1951 to December 8, 1954, during which period he was under suspension and performed no services whatever for the county. The plaintiff appealed to the Appellate Division and we certified under *R. R.* 1:10–1(*a*).

In 1947 the prosecutor of Bergen County appointed the plaintiff as a county detective. The plaintiff's duties were "to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law"; he was in the classified service of the civil service and possessed the powers, rights and obligations of police officers, constables and special deputy sheriffs in criminal matters. *N. J. S.* 2*A*:157–2. On October 9, 1951 the grand jury of Bergen County returned an indictment against the plaintiff charging him with willfully neglecting to perform his duties as a county detective. On the same day the deputy attorney-general who was then in charge of the Bergen County prosecutor's office suspended the plaintiff. No services whatever were performed by the plaintiff for the county during his suspension. The propriety of the deputy attorney-general's action seems beyond question for it would have been decidedly against the public interest for the plaintiff to have served as a law enforcement officer while he was under indictment. *Cf. Russo v. Walsh*, 18 *N. J.* 205, 212 (1955). However, the indictment against the plaintiff was never brought on for trial and on December 7, 1954 it was dismissed on the State's motion. On the following day the prosecutor of Bergen County directed that the plaintiff report forthwith

for active duty as a county detective and fixed his salary thereafter at the rate of $5,000 per annum. On February 14, 1955 the plaintiff filed his complaint against the defendants, claiming that there was due him the sum of $13,661.40 representing unpaid salary for the period of his suspension from October 9, 1951 to December 8, 1954. In due course cross-motions for summary judgments were filed; the court granted the motion by the defendants and the present appeal is from the ensuing judgment.

We are not here disposed to question the pertinent common-law principles as enunciated in numerous New Jersey decisions covering a span of almost a century. See *Mayor, etc., of City of Hoboken v. Gear*, 27 *N. J. L.* 265 (*Sup. Ct.* 1859); *Stuhr v. Curran*, 44 *N. J. L.* 181 (*E. & A.* 1882); *Erwin v. City of Jersey City*, 60 *N. J. L.* 141 (*E. & A.* 1897); *Fitzpatrick v. City of Passaic*, 105 *N. J. L.* 103 (*Sup. Ct.* 1928), affirmed 105 *N. J. L.* 632 (*E. & A.* 1929); *Hillel v. Borough of Edgewater*, 106 *N. J. L.* 481 (*E. & A.* 1930); *Sganga v. Teaneck Township*, 130 *N. J. L.* 218 (*Sup. Ct.* 1943); *Strohmeyer v. Borough of Little Ferry*, 136 *N. J. L.* 485 (*E. & A.* 1948); *Pollak v. Borough of Wallington*, 22 *N. J. Misc.* 239 (*D. Ct.* 1944). *Cf. Devlin v. City of Trenton*, 126 *N. J. L.* 563 (*E. & A.* 1941); *Harl v. Borough of Hawthorne*, 120 *N. J. L.* 27 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 135 (*E. & A.* 1938). In the leading case of *Mayor, etc., of City of Hoboken v. Gear, supra*, a policeman was appointed for two years but actually served for less than a year because the police force was disbanded by resolution of the city council. In rejecting his salary claim for the remainder of the two-year period during which he performed no services, Chief Justice Green expressed broad principles which have become firmly imbedded in the common law of our State. He pointed out that the test of whether the appointee held a public office was whether he was "concerned in the administration of public duties"; that his appointment to public office was "neither a contract between the public and the officer that the service shall continue during the designated term, nor that the salary shall not be changed

during the term of office"; and that his right to compensation grew *"out of the rendition of the services* and not out of any contract between the government and the officer that the services shall be rendered by him."

In *Stuhr v. Curran, supra,* the court held that a *de jure* officer who had performed no services was not entitled to recover from a *de facto* officer who had actually performed the required services; in the course of his opinion Justice Van Syckel noted that in England public offices were incorporeal hereditaments and the subjects of vested or private interests, whereas in the United States they were not held by grant or contract nor did individuals have any property or vested rights in them. He stressed that "no countenance should be given to the notion that public offices are created for the benefit of office-holders" and that the "right to emolument must be regarded as having no legal existence except as arising out of the rendition of services for which they are compensatory."

In *Hillel v. Borough of Edgewater, supra,* several municipal police officers were suspended after convictions for violations of the Federal Prohibition laws. Thereafter, their convictions were reversed on appeal and they were reinstated as police officers. They sued to recover salaries for the period during which they had been suspended but the Court of Errors and Appeals unanimously rejected their claims. Justice Lloyd's opinion for the court embraced fully the views expressed in *Mayor, etc., of City of Hoboken v. Gear, supra* and *Stuhr v. Curran, supra.* He pointed out that the validity of the suspensions had never been attacked directly and could not be attacked in collateral proceedings for salaries; he reaffirmed our common-law doctrine that the "right of recovery by a public officer is dependent on the performance of the duties of the office"; and he restated, as settled law in our State, the rule that the "emoluments of the office are bestowed on him who performs the services and not upon one who has failed to perform the services, except as under statutory legislation it is otherwise provided."

In *Sganga v. Teaneck Township, supra,* the court cited several of the aforementioned cases (including *Stuhr v. Curran* and *Hillel v. Borough of Edgewater, supra*) as common-law authorities for the broad doctrine that a public officer could not recover salary for a period during which he had performed no services; in response to the contention that the common-law cases should not be invoked where the public officer was prevented from working by action of his superior and through no fault of his own, the former Supreme Court remarked briefly that the "cases do not turn upon the question of why the services were not performed." In *Strohmeyer v. Borough of Little Ferry, supra,* the Court of Errors and Appeals, in rejecting a police officer's claim for salary during a period of suspension stated flatly: "Apart from statute that there is no right of recovery for a salary not earned seems clear." To the extent that the former Supreme Court's opinion in *State ex rel. Jardot v. City of Rahway,* 2 *N. J. Misc.* 742 (*Sup. Ct.* 1924) on rehearing 3 *N. J. Misc.* 201 (*Sup. Ct.* 1925) embodies notions to the contrary it must be disregarded as being inconsistent with the controlling decisions of the court of last resort.

The *Strohmeyer* case, *supra,* involved not only the basic common-law principle but also the construction of *R. S.* 40:46–34 which modified it under certain circumstances. *Cf. Devlin v. City of Trenton, supra,* 126 *N. J. L.,* at *page* 565. That statute then provided that "Whenever a municipal officer or employee, including any policeman or fireman, has been or shall be illegally dismissed from his office or employment, and such dismissal has been or shall be judicially declared illegal, he shall be entitled to recover the salary of his office or employment for the period covered by the illegal dismissal." Justice Bodine, in an opinion delivered for the entire court, construed the statute strictly and as inapplicable to a case where a municipal police officer had not been dismissed but had been suspended pending a departmental trial which ultimately resulted in a not guilty finding. But see *L.* 1948, *c.* 163, *p.* 900; *Strohmeyer v. Borough of Little*

*Ferry,* 6 *N. J. Super.* 282 (*App. Div.* 1950); *D'Ippolito v. Maguire,* 33 *N. J. Super.* 477, 486 (*App. Div.* 1955).

In *Hart v. Borough of Hawthorne, supra,* the court took the position that statutes which seek to alter the common-law principle that a public officer who renders no service is not entitled to prevail in an action seeking compensation should, in the public interest, receive a narrow rather than a broad construction. There the plaintiff was appointed as recorder of the Borough of Hawthorne but was excluded by a *de facto* recorder who actually performed the required services. She sued the Borough for salary for the period of her exclusion and relied on the aforementioned statute which provided that whenever a municipal officer had been illegally dismissed he would be entitled to recover the salary for the period of the illegal dismissal. The court found that there had been no "dismissal" of the plaintiff and that the statute should not be extended to her case by construction; in the course of his opinion Chief Justice Brogan placed reliance upon the general rule that "statutes which change the rule of common law, as this statute did, must, by well settled authority, be strictly construed." *Cf. Carlo v. Okonite-Callender Cable Co.,* 3 *N. J.* 253, 265 (1949); 3 *Sutherland, Statutory Construction* (*3rd ed.* 1943), §§ 6201 *et seq.*

Although it has not yet done so, we readily assume that the Legislature could in clear and direct terms constitutionally allow compensation to all law enforcement officers (state, county and municipal) who are suspended pending trial on an indictment for misconduct in office and are later acquitted or otherwise vindicated. *Cf. Mullane v. McKenzie,* 269 *N. Y.* 369, 199 *N. E.* 624, 103 *A. L. R.* 758 (1936). While such legislation would tend to satisfy the individual interests involved it would admittedly do so by placing upon the public the burden of expenditures for salaries without corresponding services. If other officers are appointed during the period of suspension duality of payments may result and if the suspended officers engage in private work during their suspensions they may be enabled to receive double compensation. The conflicting policy considerations are socially impor-

tant and far reaching and the proper course to be carefully chosen and ultimately followed will rest with the Legislature rather than with the courts. In the meantime our judicial responsibility is to determine whether the several statutes which have been advanced by the plaintiff in support of his claim for compensation have changed the common-law principle in its applicability to the particular facts presented in the instant matter; if they have not then it is clear, as the Law Division held, that the plaintiff is precluded from the recovery of salary for the period of suspension during which he rendered no public service whatever. See *Hillel v. Borough of Edgewater, supra; Strohmeyer v. Borough of Little Ferry, supra.* This conclusion does not impair the doctrine that the salary of a public officer who regularly continues to function in his office is not affected by a diminution of his duties (*Bennett v. Orange,* 69 *N. J. L.* 176, 178 (*Sup. Ct.* 1903), affirmed 69 *N. J. L.* 675 (*E. & A.* 1903)); nor does it in anywise cast any doubt on the validity of salary payments to such officer during absence for proper cause, such as holiday, vacation, or illness. *Cf. Nelson v. Dean,* 27 *Cal. 2d* 873, 168 *P. 2d* 16, 168 *A. L. R.* 467 (1946).

■ The plaintiff places reliance upon *R. S.* 40:46–34, *N. J. S. 2A*:135–9, *N. J. S. 2A*:157–4, and *N. J. S. A.* 11:4–3.6; these statutes do not in terms furnish support for his claim and, in the light of the precedents, we do not consider ourselves free to extend them in his favor by judicial construction. See *Hart v. Borough of Hawthorne, supra; Strohmeyer v. Borough of Little Ferry, supra. R. S.* 40:46–34 was amended in 1948 by an "Act concerning officers and employees of municipalities in this State" to provide that whenever a municipal officer or employee, including any policeman or fireman, has been or shall be "illegally dismissed or suspended" from his office or employment and the dismissal or suspension has been or shall be judicially declared illegal, he shall be entitled to recover the salary of his office or employment for the period covered by the illegal dismissal or suspension, provided written application therefor shall be filed "with the clerk of the municipality" within 30 days after

the judicial determination. *L.* 1948, *c.* 163, *p.* 900. See *L.* 1948, *c.* 395, *p.* 1592. The term "municipality" is defined in *R. S.* 40:42–1 to mean and include a city, town, township, village, borough and "any municipality governed by a board of commissioners, or improvement commission." It is clear that *R. S.* 40:46–34 as amended applies, in terms, solely to municipal officers and employees and has no relation to state or county officers and employees. To view it as applicable to a county detective would be to enlarge its language in disregard of the rule of strict construction expressed in *Hart v. Borough of Hawthorne, supra,* and applied in *Strohmeyer v. Borough of Little Ferry, supra.*

Furthermore, question may be raised as to whether the plaintiff's suspension may properly be described as an illegal one within the contemplation of *R. S.* 40:46–34 as amended. But *cf. Strohmeyer v. Borough of Little Ferry, supra; Strohmeyer v. Borough of Little Ferry, supra.* We are not here concerned with a case in which a municipal police officer was illegally suspended on departmental charges which lacked probable cause or were politically or otherwise improperly motivated. We are concerned with a case in which a county law enforcement officer was indicted by a duly constituted grand jury. The indictment furnished ample ground for the action taken by the plaintiff's superior and there is no suggestion that the plaintiff's suspension was not in the public interest. On the contrary the plaintiff's brief expressly repudiates the notion that an appointing authority does not have power to suspend a law enforcement officer who has been indicted for official misconduct and voices agreement with that part of the Law Division's opinion (36 *N. J. Super.*, at *page* 385) which points out that the public might be seriously disadvantaged if the indicted officer were permitted to function pending his trial. Since the suspension was lawful and proper when made may it now accurately be said to have been an illegal one because of the later dismissal of the indictment? The matter is one of legislative purpose and perhaps a future enactment will deal further

with it; in the meantime we find that the plaintiff, as a county officer, may not invoke the provisions of *R. S.* 40:46–34.

*N. J. S.* 2A:135–9 deals with the forfeiture of an office upon conviction and its restoration upon reversal of the conviction. It provides that any person holding an office or position, under the government of this State or its subdivisions, who is convicted of a misdemeanor or high misdemeanor touching the administration of his office or position or involving moral turpitude, shall forfeit his office or position from the date of his conviction. It also provides that if the conviction be reversed the officer shall be restored to his office or position "with all the rights and emoluments thereof from the date of the forfeiture." Presumably the rights and emoluments referred to are those such as seniority and pension rights which would otherwise have accrued but were terminated upon the forfeiture of the office; the statute does not manifest any purpose to alter the independent common-law principle that a public officer's right to receive salary is dependent on the performance of the duties of his office; and in any event it is not to be applied in favor of a public officer whose office was never forfeited and who seeks compensation for a period during which he rendered no services because he was properly under suspension.

*N. J. S.* 2A:157–4 provides that in counties of the second class there may be appointed not in excess of nine county detectives including one chief, one captain and one lieutenant; it then provides that their annual salaries shall be fixed at not less than $5,500 for the chief, not less than $5,000 for the captain, not less than $4,500 for the lieutenant and not less than $3,500 for the other county detectives. This statute merely relates to the fixing of the officer's annual salary and does not bear on the question of whether the county is obligated to pay it when it has not been earned because the officer was under suspension. It may be assumed that in the cited common-law cases, where public officers were denied recovery, their annual compensation had comparably been fixed by or pursuant to legislative authority. See *Hillel*

*v. Borough of Edgewater, supra; Strohmeyer v. Borough of Little Ferry, supra.*

The final statutory provision requiring mention is *L.* 1941, *c.* 91, *p.* 206—now *N. J. S. A.* 11:4–3.6. That enactment seems to relate only to State employees. *Cf. R. S.* 11:4–1 *et seq.* with *R. S.* 11:19–1 *et seq.* It first provides that every person who holds a position, office or employment "under the government of this State" and has tenure under *Title* 38 of the *Revised Statutes* and has held his position for three years shall become part of the classified service; it then sets forth that each such person shall be subject to the provisions of the Civil Service Law and shall not be removed except for cause and that the emoluments of the holder of the position, office or employment "shall in no wise be reduced except in the case of general retrenchment." It was intended to prevent not only improper removals but also improper reductions designed to circumvent or defeat civil service tenure and the underlying governmental policy against the intrusion of political or other alien considerations. It does not suggest any legislative purpose to insure compensation to a public officer for salary during a period when he was properly under suspension.

We are satisfied that under the controlling authorities the Law Division's judgment in the instant matter was legally sound and must be affirmed. Nevertheless we take the liberty of suggesting that the issues are of sufficient public importance to warrant further legislative consideration of the entire subject. The Legislature may perhaps conclude, as have Legislatures in other states, that there should be a comprehensive enactment which justly provides compensatory protection for all public officers and employees who are suspended pending trial and are later acquitted or otherwise vindicated. In preparing such legislation consideration would undoubtedly be given to the need for appropriate provisions which would safeguard the public against a claim for an unduly long period of suspension where the officer or employee has failed to make reasonable efforts to obtain expeditious determination of the charges against him and against excessive com-

pensation where he has had fair opportunity to engage in gainful private employment during the period of his suspension. In any event, these and related policy matters are wholly within the province of the Legislature and our judicial function, in the event of further legislation, will simply be one of statutory interpretation and application within constitutional limits.

Affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justice WACHENFELD—1.