53 N.J. Super. 506 (1959)
147 A.2d 827
DANIEL MIELE, JR., PLAINTIFF,
v.
JOSEPH V. McGUIRE, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 13, 1959.
*508 Messrs. Mylod & Mylod (Mr. Philip J. Mylod appearing), attorneys for plaintiff.
Mr. Thomas E. Durkin, Jr., attorney for defendants.
SCHERER, J.S.C.
Plaintiff brought suit by a complaint in lieu of prerogative writs seeking to set aside his dismissal as an employee of the Passaic Valley Sewerage Commission (hereinafter called the "Commission"), to compel his reinstatement to his former position and to require that he be reimbursed for the salary lost during the period of discharge.
Plaintiff is an honorably discharged veteran of the United States Army, having served during the Korean conflict in combat duty. His period of active duty was from November 7, 1950 to November 19, 1952. Thereafter, he was in the United States Army Reserve from November 19, 1952 to December 4, 1956.
Defendants are the members of the Passaic Valley Sewerage Commission, a body politic and corporate of New Jersey, created pursuant to R.S. 58:14-1 et seq.
Plaintiff, prior to entering the army, was an employee of the Commission. His employment started November 29, 1949. The resolution appointing him provided that he be appointed "Maintenance Man * * * to serve at the pleasure of the Commissioners, said employment being subject to the right of the Commissioners to remove said employee at any time without notice."
As stated above, plaintiff entered the army on November 7, 1950, presumably through Selective Service. The minutes of the Commission do not disclose whether he resigned or was given a leave of absence. There is a reference in the minutes of the meeting of November 28, 1950 stating that *509 the plaintiff had recently been inducted into the armed services and that he was to be reimbursed for a week's salary which had been withheld.
The next reference to the plaintiff in the minutes of the Commission is at the meeting of January 27, 1953, where it is stated that the plaintiff, "a former employee," had been released from the armed services and wished to return to his employment. Thereupon, a motion was adopted and plaintiff was "re-appointed Maintenance Man * * * effective January 29, 1953 to serve at the pleasure of the Commissioners, said employment being subject to the right of the Commissioners to remove said employee at any time without notice."
Plaintiff alleges that he was not aware of the provision either of the original resolution in 1949 or the later resolution in 1953 that he was to serve at the pleasure of the Commission, subject to being removed without notice.
It should be noted here that R.S. 58:14-6, the statute creating the Commission, provides that the Commissioners may from time to time appoint such employees as they may deem necessary to carry out the purposes of the act, may prescribe their duties, fix their compensation, "and remove them at pleasure." This statute was in effect at all times during the plaintiff's employment.
Plaintiff was dismissed, without notice and without hearing, effective July 22, 1958. At a regular meeting of the Commissioners on July 1, 1958 a resolution was adopted providing that the employment of plaintiff and some other employees, all of whom were serving at the pleasure of the Commissioners, should be terminated on the dates fixed in the resolution. Pursuant to the resolution, the clerk of the Commission sent a letter dated July 2, 1958 to the plaintiff advising him of the action of the commissioners.
Thereafter plaintiff, on August 7, 1958, appealed to the Department of Civil Service of New Jersey, complaining that he had been dismissed without written charges and a hearing after eight years of service with the Commission and that this dismissal was illegal because, as an honorably *510 discharged veteran, he was not subject to dismissal except upon the filing of written charges and after a fair and impartial hearing. The Department of Civil Service, on September 10, 1958, advised plaintiff that the employees of the Commission were not under Civil Service and, therefore, it had no jurisdiction.
The complaint in this case was filed August 15, 1958. There is no dispute as to any of the material facts. The plaintiff has made a motion for summary judgment and by consent the case was submitted as if the defendants had made a countermotion for summary judgment.
The defendants' position is that the plaintiff had no tenure and could be discharged at will under the provisions of the above cited statute and the resolutions appointing and reappointing him. On the argument, the defendants raised the issue that the plaintiff's position had been abolished for reasons of economy or otherwise and thus contended that the plaintiff's motion had to be denied and a trial had on that issue. Subsequently, the defendants abandoned this position and this is not an issue in the case.
Plaintiff's contention is that, as an honorably discharged veteran of the United States Army serving in the Korean conflict, he is entitled to the protection of the veterans' tenure acts, R.S. 38:16-1 and N.J.S.A. 38:23A-3. The first statute provides that no person holding a position or office under the government of the State or of any county, municipality or board of education, who has served in the armed services of the United States in any war of the United States and who has been honorably discharged, shall be removed from his position or office except for good cause after an impartial hearing. This statute, as originally adopted, was held not applicable to employees of the Commission. Brickett v. Lagay, 134 N.J.L. 1 (E. & A. 1946). After this case was decided at the trial level and while it was pending on appeal, the statute was amended, effective May 2, 1942, and as amended has been held to apply to Commission employees. DeVita v. Housing Authority of City of Paterson, 17 N.J. 350, 359 (1955).
*511 The question here to be determined is whether the Korean conflict should be considered as "any war of the United States" (R.S. 38:16-1) or "in any of its wars" (N.J.S.A. 38:23A-3), so as to accord the plaintiff the benefit of the tenure provisions of the above cited statutes.
N.J.S.A. 38:23A is entitled "Special Privileges and exemptions of Persons in Military and Naval Service." Section 3 thereof is relied upon by the plaintiff and applies to persons "honorably discharged from the armed services of the United States in any of its wars." It is conceded that the plaintiff was honorably discharged from the United States Army, but the defendants deny that he served during "any war of the United States" or "in any of its wars."
There appears to be only one case in which this precise problem has been decided in this State. That suit, Stanbery v. Aetna Life Ins. Co., 26 N.J. Super. 498 (Law Div. 1953), was brought to recover double indemnity benefits under a policy of life insurance. The policy provided for a double indemnity payment provided the death of the insured did not result, among other causes, from military or naval service in time of war. The insured was killed in Korea in 1952. The insurance company paid the face amount of the policy but declined to pay the double indemnity on the ground that the insured's death resulted from military service in time of war. Plaintiff contended that the war referred to in the policy was a constitutionally declared war, based upon Congressional action taken pursuant to the provisions of the Federal Constitution, and did not refer to what has been commonly called "a police action." Judge Leyden, after a careful review of the authorities defining the meaning of the word "war," including a case which had just been decided by the Pennsylvania Supreme Court, Beley v. Pennsylvania Mutual Life Ins. Co., 373 Pa. 231, 95 A.2d 202 (1953), certiorari denied 98 L.Ed. 346 (1953), held that the insured's death resulted from military service in time of war and entered judgment in favor of the defendant. In the Beley case, supra, the court divided four to two in holding that the insured, when he was killed in Korea, was *512 not actively engaged in military service in time of war, but the decision turned on the construction of the words of the insurance contract. For a discussion of this subject, see 36 A.L.R.2d 1018, at page 1083.
There can be no doubt that the United States did not enter the Korean conflict pursuant to a formal declaration of war by the Congress under Art. I, Sec. 8, par. 11 of the Federal Constitution. Nor, can there be any doubt that the exclusive power to declare war is vested in the Congress under the cited constitutional provision. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 873, 96 L.Ed. 1153, 26 A.L.R.2d 1378 (1952).
But, under our present membership in the United Nations, a declaration of war by the Congress is no longer necessary in order to commit our armed forces to combat. The United Nations charter, 59 Stat. 1031, to which the United States subscribes, provides for a Security Council. Article 42 of the charter empowers the Security Council to take action with air, sea or land forces to maintain or restore international peace and security. Article 43 of the charter provides that all members of the United Nations shall undertake to make available to the Security Council armed forces to maintain international peace and security. The United States did make such a force available in 1950, when the Korean conflict broke out. The United States, having been called upon by the Security Council as a member of the United Nations, was required to accept the responsibilities it had agreed to undertake through its membership or to repudiate Articles 42 and 43 and abandon the whole purpose of the United Nations. Pursuant to this request under Article 43 to contribute armed forces and other assistance to maintain international peace and security, the United States called several million of its citizens, including a large number who had already served in World War II, into service. Plaintiff was one of those who served. It would be difficult to convince those citizens and their families, particularly where death and injuries occurred during the Korean conflict, that this was not a war in every sense of *513 that word. Lack of a formal declaration of war did not mitigate the suffering of the wounded nor the sorrow of the families of the dead.
Justice Jackson, in the Youngstown Sheet & Tube Co. case, supra, said, "Of course, a state of war may in fact exist without a formal declaration." There are numerous cases collected in Beley v. Pennsylvania Mutual Life Ins. Co., supra, which hold that war can exist between the United States and the armed forces of another nation, de facto or de jure, without any formal declaration of war. President Truman, on December 16, 1950, declared that a state of "national emergency existed" because of the Korean conflict. To so strictly construe the words of the statutes of our State, as contended for by the defendants, is to ignore the realities of the situation in favor of strict legalisms. This the court is not required to do.
In an article entitled, "The Recognition of Cuban Belligerency," 9 Harv. L. Rev., pp. 406, 407, Professor Beale states:
"War, in law, is not a mere contest of physical force, on however large a scale. It must be an armed struggle, carried on between two political bodies, each of which exercises de facto authority over persons within a determinate territory, and commands an army which is prepared to observe the ordinary laws of war. It requires, then, on the part of insurgents an organization purporting to have the characteristics of a state, though not yet recognized as such. The armed insurgents must act under the direction of this organized civil authority. * * *."
See also, O'Neill v. Central Leather Co., 87 N.J.L. 552 (E. & A. 1915); New York Life Ins. Co. v. Bennion, 158 F.2d 260 (10 Cir.), certiorari denied 331 U.S. 811, 67 S.Ct. 1202, 91 L.Ed. 1831 (1947).
The Korean conflict comes within the definition of war as above stated, since there were two political bodies, North and South Korea, claiming sovereignty over the entire population and territory of Korea. Each had armies and each then exercised, and still does, authority over armies and the population within their respective territories. The United States entered the Korean conflict on behalf of what was *514 the established government prior to the outbreak of hostilities, thereupon making itself a party to the conflict through the United Nations.
In another Presidential proclamation issued April 8, 1952, the following words appear:
"Whereas American fighting men and fighting men of other nations of the United Nations are now engaged in deadly combat with the forces of aggression in Korea, and forces of the United States are stationed elsewhere overseas for the purpose of participating in the defense of the Atlantic Community against aggression; * * *."
Under these circumstances, it must be concluded that the United States was at war during the Korean conflict and that the plaintiff has, therefore, served in the armed forces "in any war of the United States" or "in any of its wars."
Defendants argue that, if the Legislature had intended that veterans of the Korean conflict were to be given the same privileges with respect to tenure as the veterans of the two world wars, the statutes, R.S. 38:16-1 and N.J.S.A. 38:23A-3, would have been amended to include a reference to what, after the President's proclamation of December 16, 1950, became known as the "present emergency." Defendants point to amendments to various veterans acts, such as R.S. 38:18-1, 2, Compensation for Blind Soldiers, etc.; N.J.S.A. 38:18A-1, Compensation for Veterans Suffering from Paraplegia; R.S. 38:23-4, Leave of Absence from Public Employment, etc.; N.J.S.A. 38:23A-5, Renewal or Reinstatement of Professional or Occupational Licenses, and others, in all of which there are provisions that the benefits apply to persons in the armed forces "in the present emergency."
While it is true that these statutes do contain these words, this does not require a finding that there was a legislative intent to withhold from Korean veterans the benefits of R.S. 38:16-1 and N.J.S.A. 38:23A-3. It is just as reasonable an inference that the Legislature believed the wording of these two statutes was broad enough to cover *515 veterans of the Korean conflict without the necessity of amending them merely to include the statement that they were meant to accord benefits to persons serving in the Korean conflict. In State v. Brown, 22 N.J. 405, 415 (1956), it was stated that scholastic strictness of definition cannot be adopted if it prevents "a reasonable construction." In Wright v. Vogt, 7 N.J. 1 (1951), the court said that the spirit of a legislative act will prevail over the literal sense of terms and the rule of strict construction cannot be allowed to defeat the apparent legislative design. A reasonable construction is that the Korean conflict was a war of the United States and thus the provisions of R.S. 38:16-1 and N.J.S.A. 38:23A-3 apply to the plaintiff and others similarly situated. The obvious design and desire of the Legislature was to confer benefits on all veterans under the above quoted statutes. It is impossible to conclude that this most important benefit  that of being so protected in their jobs as to prevent discharge for any reason except good cause after a fair and impartial hearing  was intended to be withheld from Korean veterans.
It being decided that the plaintiff is entitled to the benefit of the statutes in question, and thus that his dismissal was improper because he was not removed for good cause after a fair and impartial hearing, we turn to the question of whether he is entitled to be paid for the period from July 22, 1958, when his discharge became effective.
Plaintiff claims that he is entitled to compensation under the provisions of N.J.S.A. 40:46-34. Admittedly, he has not performed any services for the Commission since the date of his discharge. It is argued by the defendants that the cited statute relates only to persons employed by municipal corporations and not to employees of political bodies like the Commission.
The exact words of N.J.S.A. 40:46-34 are that "Whenever a municipal officer or employee, including any policeman or fireman, has been or shall be illegally dismissed or suspended * * *" (emphasis supplied), he shall be entitled under certain circumstances to recover salary during *516 the period of suspension, if the dismissal or suspension shall be judicially declared to have been illegal.
R.S. 40:42-1 defines a municipality as being and including any city, town, township, village, borough, and any municipality governed by a board of commissioners or improvement commission. Thus, it is clear that a body politic, such as the defendant, is not included in this category of a municipality.
It was held in DeMarco v. Bd. of Chosen Freeholders of Bergen County, 21 N.J. 136 (1956), that this statute did not include county employees. See also, Winne v. Bergen County, 21 N.J. 311 (1956).
Justice Jacobs, in the DeMarco case, supra, reviewed the authorities in New Jersey on the question of whether or not a discharged or suspended county employee could recover for back salary for the period during which he did not work. He concluded that the authorities were uniform in holding that statutes such as N.J.S.A. 40:46-34 should be strictly construed, since they change the common law rule that a public officer who renders no service is not entitled to compensation.
The Superior Court, in both the DeMarco and Winne cases, supra, held that N.J.S.A. 40:46-34 relates only to municipal employees and should not be so broadly construed as to encompass county employees, and that it was up to the Legislature, if it felt that it was proper or just to do so, to change the situation. But, as was said at page 143 of 21 N.J. at page 399 of the DeMarco opinion, "The conflicting policy considerations are socially important and far reaching and the proper course to be carefully chosen and ultimately followed will rest with the Legislature rather than with the courts."
On the basis of the wording of the statute and the decisions in the above cases, it is clear that the plaintiff cannot recover salary for the period during which he performed no work for the Commission. Whatever injustice may appear to result from this holding can be remedied only by the Legislature and not by the courts.
*517 Plaintiff argues that the provisions of N.J.S.A. 38:23A-3 are broad enough to bring the plaintiff within the description of the persons protected by N.J.S.A. 40:46-34. There is nothing whatever in the first mentioned statute which would impel that conclusion, particularly in view of the limitation placed upon the construction of N.J.S.A. 40:46-34 by the DeMarco and Winne cases. It is significant that although both of these cases were decided in 1956, to date there has been no amendment to the statute. In the last session of the Legislature a bill was introduced, known as Assembly 174, to amend the statute. The statement annexed to the bill refers to the fact that it is intended to give county and state employees similar treatment with respect to recovery of salary in the event of illegal dismissal as is presently enjoyed by municipal employees. It would thus appear that the Legislature has recognized the inequity inherent in the present statute.
Plaintiff's motion for summary judgment, therefore, will be granted to the extent of directing that he be reinstated forthwith to his former position because, as an honorably discharged soldier who served in a war of the United States, he has tenure, despite the fact that the resolution of employment recites that he is to serve at the pleasure of the Commissioners. Having such tenure, he was not subject to being discharged except for cause and after a fair and impartial hearing.
That part of plaintiff's motion which seeks payment of salary for the period of discharge will be denied and, since the matter was submitted as if on defendants' countermotion for summary judgment, there will be a judgment in favor of the defendants dismissing the plaintiff's claim for back pay during the period of discharge.
A judgment may be presented in accordance with these conclusions.
Costs will be awarded to the plaintiff.