JEROME R. FREED *v.* RONALD J. BALDI, ET AL.

No. 23224.

ANDY L. YOUNG, ET AL *v.* THE CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF DENVER, ET AL.
(443 P.2d 716)

Decided July 15, 1968. Rehearing denied August 6, 1968.

CREAMER & CREAMER, for plaintiff in error Jerome R. Freed (No. 23155), and for defendant in error Jerome R. Freed (No. 23224).

EDWARD O. GEER, DONALD L. DILL, for plaintiffs in error Andy L. Young, et al (No. 23224), and defendants in error Andy L. Young, et al (No. 23155).

MARTIN ZEROBNICK, for defendants in error Ronald J. Baldi, et al.

MAX P. ZALL, City Attorney, BRIAN H. GORAL, Assis-

tant, for defendants in error City and County of Denver, its Departments, and the Civil Service Commission.

WILLIAM J. CHISHOLM, EMORY L. O'CONNELL, amicus curiae on behalf of The American Legion Department of Colorado.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

■ Two actions in the lower court were consolidated for trial. From the orders and judgment entered in the two cases below, separate writs of error were issued out of this court. The two were consolidated here. The answer to the one central issue will decide both suits. The sole question for our determination is as follows: *IS A PERSON WHO HAS SERVED IN THE ARMED FORCES SUBSEQUENT TO APRIL 28, 1952, DURING THE TIME OF THE "KOREAN CONFLICT," ENTITLED TO VETERAN'S PREFERENCE POINTS UNDER THE COLORADO CONSTITUTION AS HAVING SERVED IN TIME OF WAR?*

We answer the question in the negative.

The controversy arose in connection with the promotional examination for the rank of sergeant of police conducted by the City and County of Denver Civil Service Commission. Plaintiff in error, Jerome R. Freed, a patrolman, had taken the examination and received the score of 80.54 to which were added ten veteran's preference points by reason of Freed's service and a service-connected disability in the Armed Forces between June 13, 1952, and June 12, 1956. This period covered a portion of the time in which the United States was engaged in hostilities in Korea. Without the veteran's preference points Freed would have placed 56th on the eligibility list for promotion to sergeant; with his composite score of 90.54, he was ranked third on the

list. With Freed in third place, defendant in error Baldi was No. 7 when on April 14, 1966, the Manager of Safety asked the Civil Service Commission to certify to him names of six patrolmen for promotion to the rank of sergeant.

Baldi brought suit in May of 1966 in the Denver District Court in the nature of mandamus to compel the Civil Service Commission to certify his name for promotion and to compel the Manager of Safety to promote him to the rank of sergeant, alleging that by reason of awarding veteran's preference points to Freed illegally, Baldi was not among the first six on the list; whereas, if Freed's name were eliminated, he would be among the first six and entitled to the promotion.

In January 1967, a similar action was filed by 34 of the patrolmen who remained on the Civil Service eligibility list above the 56th place where Freed would have been had he not been awarded the ten veteran's preference points. These plaintiffs alleged that if the veteran's preference points had not been illegally awarded to Freed and added to his examination score, they would be eligible for promotion before Freed. In their prayer they ask for a temporary and permanent restraining order to prohibit the Civil Service Commission from vacating or terminating the eligibility list for promotion to the rank of sergeant until all persons above the position at which Freed should have been correctly listed were promoted to the rank of sergeant. They also asked for an order granting the plaintiffs, when promoted, seniority *nunc pro tunc* to the date of the illegal promotion of Freed.

In a single order entered in both cases, the trial court ruled:

" * * *

"(2) The plaintiffs in both of these cases had higher composite scores in the Merit Examination Results in effect next prior to March 30, 1966, than defendant Jerome R. Freed.

"(3) That Defendant Jerome R. Freed was wrongfully

allotted ten (10) World War II Veteran's preference points which in the aggregate gave him a composite score of 90.54% and without which he would have had 80.54%.

"(4) That defendant Freed having served in the Armed Forces from June 13, 1952 until June 12, 1956 was not entitled to World War II Veteran's preference points, in that World War II ended for the purposes of Article XII, Section 14 of the Constitution of the State of Colorado on April 28, 1952.

"(5) That plaintiff Baldi should have been promoted on May 1, 1966 to Sergeant of Police.

"(6) That the plaintiffs in case No. B-98985 should all have been placed above Defendant Freed on the eligibility list in effect on May 1, 1966.

"(7) That the defendant Civil Service Commission and its individual member defendants [the Chief of Police and Manager of Safety] acted contrary to law in not promoting plaintiff Baldi on May 1, 1966."

The order and judgment of the court were:

"(1) Plaintiff Ronald J. Baldi be promoted to the grade of Sergeant of Police, *nunc pro tunc,* as of May 1, 1966 and

"(2) That the list in effect as to all times material to case No. B-98985 be and hereby is stayed pending litigation of the controversies in that case."

The article of the Colorado constitution requiring interpretation in this controversy is Article XII, Section 14 which provides as follows:

"Veterans preference. — In each and every examination held or conducted by the state civil service commission, the state merit council, the civil service commission of any political subdivision of the state, including cities, towns and cities and counties chartered or to be chartered under the XXth amendment to the constitution of the state of Colorado, or by the successors of any such commissions or council having all or a part of the duties thereof, or held or conducted by any other officer,

agency, department of the state or employee thereof, for appointment and employment in and promotions to offices and places of trust and employment in the classified civil service of the state, or in the civil service of any of its political subdivisions as aforesaid, the passing grade for each candidate shall be the same. Five points shall be added to the grades of candidates receiving a passing grade who served in the armed forces of the United States *in times of war* and who were honorably discharged therefrom, and also to the grades of candidates who are widows of those who so served and were so discharged or who died during their service. Ten points shall be added to the grades of candidates receiving a passing grade who incurred disability in the line of duty while so serving and who were so discharged. Eligibility list shall be kept and maintained for reasonable periods of all who have made passing grades in such examinations and the candidates placed thereon in the order of the grades received by them, including any points added as herein provided. The persons on said lists shall be deemed the most fit and of the highest excellence, and shall be appointed or promoted in accordance with their order thereon.

"The times of war above referred to are the period of the Spanish-American War; the period of the Philippine Insurrection; the period from April 6, 1917, to November 11, 1918, both dates inclusive; the period from December 7, 1941, to the date proclaimed by the congress or president of the United States as the end of the war declared by the United States on December 8, 1941, both dates inclusive; *and the period of any war in which the United States may hereafter engage.* The armed forces above referred to are the United States army, the United States navy, and the United States marine corps; and shall include those who served in the United States coast guard during the period commencing December 7, 1941, and ending as aforesaid, and in any future war in which said guard shall be actively engaged.

"The certificate of the war department, the navy department or of the United States veterans administration, or of any of the successors thereof, shall be conclusive proof of service, of honorable discharge, or of disability incurred in line of duty during such service.

"This section of the constitution shall be in full force and effect from the date of its approval by the vote of the people, as provided in this constitution, and it shall be in all respects self-enacting." (Emphasis added.)

It is agreed that the official date of the termination of World War II is April 28, 1952, the date that Congress finally ratified the Japanese Peace Treaty and the day on which Congress declared the end of said war under the Constitution. It is also agreed that the period in which the United States made its forces available in Korea pursuant to treaty responsibilities under the United Nations Charter to which the United States subscribed, was the period between June 27, 1950, and January 31, 1955. 38 U.S.C.A. 101 (9).

In *Pyramid Life Insurance Co. v. Masch,* 134 Colo. 70, 299 P.2d 117, this court said that the Korean conflict is not encompassed in the phrase "in times of war" as used in an insurance contract. In the *Pyramid* case, the life insurance contract provided that if the insured died while in military service "in times of war * * *," the liability of the insurance company would be limited to the return of the premiums paid. The insured died while in military service in the Korean conflict, and this court ruled as follows:

"We are asked to take judicial notice that the engagements of United States troops in Korea constituted 'War'; this, in spite of the fact, as counsel for defendant admit, that 'war' was never declared by Congress, the only authority competent to declare it, with respect to the action in Korea. *The existence or nonexistence of a state of war is a political, not a judicial, question and it is only when a formal declaration of war has been made by the Congress that judicial cognizance may be taken thereof.*

Once so declared by the political department, it becomes binding upon the courts, otherwise not. * * *" (Emphasis added.)

 The reasoning in the *Pyramid* case is applicable to the case at bar. The phrase "in times of war" in the Constitution is identical to that used in the insurance policy in *Pyramid*. From 1798 to the present time, the United States has sent its armed forces abroad over 150 times. See *Beley v. Pennsylvania Mutual Life Insurance Co.*, 373 Pa. 231, 95 A.2d 202. Most, if not all, of these military expeditions actually involved nearly every aspect of war but were not recognized officially, judicially, or historically as war. For a much briefer time, but nevertheless in a similar respect, the United States since the Korean conflict has sent members of the armed forces to South America. The constitution expressly provides that veteran's preference points be awarded to those who served during the Spanish American War, World War I and World War II, all three having been wars declared by the United States Congress. The framers of the amendment by specially mentioning the veterans of the Philippine Insurrection which was not a declared war, indicated that specific inclusion of the Philippine Insurrection was deliberately done because it otherwise would not have been encompassed in the general phrase "in times of war" as used in the constitution. Had those who drafted and submitted the constitutional amendment to the vote of the electorate intended to grant preference to every veteran in service in the armed forces at a time when the United States was engaged in any kind of armed conflict, whether large or small, it would have been a simple matter to use the proper words and to define "war" as any hostility whether or not Congress had officially declared a state of war. While it is our duty to construe the constitutional provisions, it is not in our province to substitute other words for those used in the constitution or place a forced construction on them. We hold, therefore, that the reference "in times of war"

and "the period of any war in which the United States may hereafter engage" refers to war officially declared by Congress.

The trial court, therefore, properly ruled that Freed was wrongfully allotted veteran's preference points; it erred, however, in case No. 23155, in not ordering that Freed's illegal promotion to the rank of sergeant be rescinded, and that he be reinstated as a patrolman with his position on the eligibility list determined by his score without any preference points. The judgment and order of the trial court in case No. 23224, in which the Commission was prohibited from terminating the eligibility list, should be vacated and held for naught and that action dismissed. Both cases are remanded to the trial court with instructions to proceed in accordance with this opinion.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE KELLEY dissent.

MR. CHIEF JUSTICE MOORE dissenting:

I respectfully dissent. The veterans preference provision of the constitution of Colorado, namely, Article XII, Section 14, was adopted prior to the conflict in Korea. By the provisions of that article preferences for civil service employment were granted to veterans of specifically named wars and also to military personnel serving in "* * * the period of any war in which the United States may hereafter engage."

It is my judgment that the so-called Korean conflict was a "war" and that the United States did "engage" therein. When the "war" began and when it ended are questions of fact to be determined by consideration of the totality of activity being carried on at any given time, and not by resort to calling the conflict something other than what it actually is.

If a soldier was in the service at a time when actual war was being fought, in my judgment he is entitled

to the preference provided by the constitution, without regard to the question of whether war had been declared by act of Congress.

Mr. Justice Kelley dissenting:

Because of the urgent need for an answer to the question posed by this lawsuit, I have not had the time since the adoption of the majority opinion to research the matter to the extent I would like to.

We are here concerned with the application of a provision of the state constitution which attempts to give a civil service examination grade preference to those "who served in the armed forces of the United States *in times of war.*" XII, Sec. 14.

"Times of War" is defined as including, "the period of the Spanish-American War; the period of the Philippine Insurrection; the period from April 6, 1917, to November 11, 1918, both dates inclusive; the period from December 7, 1941, to the date proclaimed by the congress or president of the United States as the end of the war declared by the United States on December 8, 1941, both dates inclusive; and *the period of any war in which the United States may hereafter engage.*" (Emphasis added.)

The veteran's preference section was adopted by the people on November 7, 1944, prior to the cessation of hostilities of World War II. The people of Colorado did not anticipate the "police action" in Korea or the unpleasantness in Viet Nam. They were only concerned with "any" *war.*

The majority opinion relies on *Pyramid Life Insurance Co. v. Masch,* 134 Colo. 70, 299 P.2d 117. The death of the insured occurred during the Korean "engagements." The court, in affirming a lower court decision, held that the complaint stated a claim on which relief could be granted. In doing so, this court refused "to take judicial notice that the engagements of United States troops in

Korea constituted 'war.'" Death of the insured, under the terms of the policy, "while in military service * * * in time of war," limited the company's liability to the return of the premiums.

The policy was issued January 17, 1941. Although this was eleven months prior to Pearl Harbor, it was almost two years after the start of the Hitler *skirmishes* in Europe. Under these circumstances, it would have been a simple matter for *Pyramid* to have employed language broad enough to have included the so-called undeclared wars, in order to have limited its liability.

The same guidelines, in my opinion, should not be applied in interpreting a covenant between *all* of the people of the state and the relatively small portion of the people who serve the country in times of military conflict by whatever name it may be called, as those which are applied to an insurance contract. The contract is between private citizens; it is unilaterally prepared, though bilaterally executed. Courts, in general, construe the terms of contracts of insurance against the company whenever an ambiguity exists.

In interpreting a constitutional provision adopted by the people, the court should, if possible, interpret it in a way that will carry out *the intent of the people*. I do not feel that the majority opinion has applied this standard in its approach to the problem.

The majority equate "in time of war" (which is the language of the constitution) with "declared war," simply because the section 14 enumerates certain military engagements which have been labeled by Congress as "Wars."

The majority opinion fails to note that on September 2, 1958, Congress enacted Public Law 85-857, 72 Stat. 1105 (Title 38 U.S.C.A.) which in the section on "definitions" provides:

"The term 'period of war,' means the Spanish-American War, World War I, World War II, the Korean conflict, and the period beginning on the date of any

future declaration of war by the Congress and ending on a date prescribed by Presidential proclamation or concurrent resolution of Congress." (38 U.S.C.A. § 101 (11)).

Concededly, the quoted language does not rise to the dignity of a declaration of war, *ex post facto,* it certainly is an acknowledgment that the Korean conflict was "a period of *war,*" rather than a *police action.*

An enlightening and well reasoned decision having more in common with the problem at hand than the *Pyramid* case is *Miele v. McGuire,* 53 N.J. Super. 506, 147 A.2d 827 decided January 13, 1959. The case involved the New Jersey Veterans' Tenure Act, which provided that no person holding a position or office under the government of the state or of any county, municipality or board of education, who has served in the armed services of the United States *in any war* of the United States and who has been honorably discharged, shall be removed from office except for good cause after an impartial hearing. The veteran was discharged without being charged and no hearing was afforded him. The New Jersey court pointed out that:

"Under our present membership in the United Nations, a declaration of war by the Congress is no longer necessary in order to commit our armed forces to combat. The United Nations Charter, 59 Stat. 1031, to which the United States subscribes, provides for a Security Council. Article 42 of the charter empowers the Security Council to take action with air, sea or land forces to maintain or restore international peace and security. Article 43 of the charter provides that all members of the United Nations shall undertake to make available to the Security Council armed forces to maintain international peace and security. The United States did make a force available in 1950, when the Korean conflict broke out. The United States, having been called upon by the Security Council as a member of the United Nations, was required to accept the responsibilities it had agreed to undertake

through its membership or to repudiate Articles 42 and 43 and abandon the whole purpose of the United Nations. Pursuant to this request under Article 43 to contribute armed forces and other assistance to maintain international peace and security, the United States called several million of its citizens, including a large number who had already served in World War II, into service. Plaintiff was one of those who served. It would be difficult to convince those citizens and their families, particularly where death and injuries occurred during the Korean conflict, that this was not a war in every sense of that word. Lack of a formal declaration of war did not mitigate the suffering of the wounded nor the sorrow of the families of the dead."

Professor Beale in an article in 9 Harvard Law Review, pages 406, 407, states:

"War, in law, is not a mere contest of physical force, on however large a scale. It must be an armed struggle, carried on between two political bodies, each of which exercises de facto authority over persons within a determinate territory, and commands an army which is prepared to observe the ordinary laws of war. It requires, then, on the part of insurgents an organization purporting to have the characteristics of a state, though not yet recognized as such. The armed insurgents must act under the direction of this organized civil authority."

In *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153, the United States Supreme Court said:

"Of course, a state of war may in fact exist without a formal declaration."

President Truman, on December 16, 1950, declared that a state of "national emergency existed" because of the Korean conflict.

On April 8, 1952, in another Presidential proclamation, the following words appear:

"Whereas American fighting men and fighting men of other nations of the United Nations are now engaged in

deadly combat with the forces of aggression in Korea, and forces of the United Nations are stationed elsewhere overseas for the purpose of participating in the defense of the Atlantic Community against aggression; * * *"

Conceding that Presidential proclamations do not rise to the dignity of Acts of Congress, we cannot shut our eyes to the realities of the situation in favor of strict legalisms when construing the meaning of a constitutional amendment.

The New Jersey court in *Miele v. McGuire, supra,* concluded that:

"Under these circumstances, it must be concluded that the United States was at war during the Korean conflict * * *."

Another pronouncement by the United States Supreme Court is pertinent to this discussion. In *Sicurella v. United States,* 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 463 (1955), a case involving a claim of draft exemption by a conscientious objector, the court said:

"We believe that Congress had in mind real shooting wars when it referred to participation in war in any form — actual military conflicts between nations on earth in our time — wars with bombs and bullets, tanks, planes and rockets."

I am convinced that the voters of Colorado had the same thing in mind when they said, "Five points shall be added to the grades of candidates receiving a passing grade who served in the armed forces of the United States in times of war * * *." Surely the constitution uses the term "war" in its generic sense and not the technical sense ascribed to the term in the insurance policy in the *Pyramid* decision. I believe that the voters of Colorado recognized that war can be declared by deeds as well as words.

It is my belief that a gross inequity exists when the benefits of public laws discriminate as between members of the same class — those who have served the United States *in times of war.*