141 N.J. Super. 104 (1976)
357 A.2d 306
COLLEGE OF MEDICINE AND DENTISTRY OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PEARLE G. MORRISON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 30, 1976.
Decided May 3, 1976.
*105 Before Judges HALPERN, CRANE and MICHELS.
Messrs. Love & Randall, attorneys for appellant (Mr. John C. Love, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Ms. Mary Catherine Cuff, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant Dr. Pearle G. Morrison appeals from a decision of the Board of Trustees of plaintiff College of Medicine and Dentistry of New Jersey (the College) terminating her as Director of Nursing at Martland *106 Hospital, the teaching hospital and a constituent unit of the College.
The College first employed Dr. Morrison in January 1971 as a consultant to the Director of Nursing at Martland Hospital. On June 1, 1971 she was appointed Director of Nursing and Assistant Professor of Public Health and Preventive Medicine at Martland Hospital. Dr. Morrison's qualifications are impressive. She holds a bachelor's degree from Hunter College, a master's degree in nursing education from New York University and a Doctorate of Education from New York University. Dr. Morrison also was an instructor at New York University for two years and has extensive hospital nursing experience. In addition, Dr. Morrison served in the United States Public Health Service in Liberia, West Africa, during the Korean War, and prior to coming to Martland was Director of Nursing at Maimonides Medical Center in Brooklyn for 4 1/2 years.
In April 1972 the Board of Concerned Citizens, a group organized by the Urban League of Essex County and sponsored by the Board of Trustees of the College for the purpose of trying to address some of the problems that were confronting the community with respect to both the College and Martland Hospital, complained to Mr. Herbert M. Groce, Jr., Vice-President for Human Resources of the College and Acting Administrator of Martland, about Dr. Morrison. The group was comprised of representatives of black, white and Spanish-speaking community-based organizations and complained generally of Dr. Morrison's lack of sensitivity and job performance with respect to the community's needs. As a result of these complaints Groce on April 24, 1972 sought Dr. Morrison's resignation, and when she refused to resign he terminated her as Director of Nursing on July 5, 1972 retroactive to April 24, 1972.
Dr. Morrison instituted an action in the Chancery Division of the Superior Court seeking to be reinstated as Director of Nursing. The Chancery Division issued an order to Groce and the Board of Trustees to show cause why an interlocutory *107 injunction should not issue restraining them from taking any action to carry out the termination, and why Dr. Morrison should not be continued as Director of Nursing. Prior to hearing the action was dismissed by stipulation of the parties on the condition that Groce and the Board of Trustees provide Dr. Morrison with a notice of the charges against her and an opportunity to be heard with respect to her termination as Director of Nursing. Thereupon Dr. Stanley S. Bergen, Jr., president of the College, appointed a special assistant to the Chancellor of the Department of Higher Education as a hearing officer to hear the matter and to make recommendations concerning the disposition thereof. The issue of whether Dr. Morrison was protected by the Veterans' Tenure Act, N.J.S.A. 38:16-1 et seq., and could not be discharged except for good cause shown after a fair and impartial hearing, was reserved by the College and was not to be decided by the hearing officer.
Following a lengthy hearing the hearing officer found that the evidence was insufficient to support a finding that Dr. Morrison was terminated as Director of Nursing for good cause. The hearing officer specifically found that the nine charges directed against Dr. Morrison were not sustained by the evidence and recommended that if the College conceded that Dr. Morrison held tenure rights under the Veterans' Tenure Act she be offered reinstatement to her position as Director of Nursing and be accorded appropriate back pay to make her whole for any monetary loss she sustained. The hearing officer expressly left open for further determination the issue as to whether Dr. Morrison was protected by the Veterans' Tenure Act.
Thereafter Dr. Bergen reviewed the record and the hearing officer's recommendations and on February 25, 1975 recommended to the Board of Trustees that the Veterans' Tenure Act did not apply, that the hearing officer's report be reversed and that the termination of Dr. Morrison be upheld. On March 13, 1975 the Board of Trustees accepted Dr. Bergen's recommendation and terminated Dr. Morrison as Director *108 of Nursing at Martland Hospital. Dr. Morrison appeals.
Dr. Morrison contends that the Veterans' Tenure Act, N.J.S.A. 38:16-1, applied to her position as the Director of Nursing at Martland Hospital and therefore she could only be terminated for good cause, and that the Board of Trustees' finding in that regard was clearly contrary to the weight of the credible evidence. There is no doubt that Dr. Morrison qualified as a veteran within the meaning of N.J.S.A. 38:16-1 by reason of her tour of duty with the United States Public Health Service during the Korean War. Cf. Miele v. McGuire, 53 N.J. Super. 506, 514-515 (Law Div. 1959), mod. on other grounds 31 N.J. 339, 341 (1960).
N.J.S.A. 38:16-1, in pertinent part, provides:
No person now holding any employment, position or office under the government of this State, or the government of any county or municipality, including any person employed by a school board or board of education, or who may hereafter be appointed to any such employment, office or position, whose term of employment, office or position is not now fixed by law, and receiving a salary from such State, county or municipality, including any person employed by a school board or board of education, who has served as a soldier, sailor, marine or nurse, in any war of the United States, or in the New Jersey State militia during the period of the World War, and has been honorably discharged from the service of the United States or from such militia, prior to or during such employment in or occupancy of such position or office, shall be removed from such employment, position or office, except for good cause shown after a fair and impartial hearing, but such person shall hold his employment, position or office during good behavior, and shall not be removed for political reasons.
This tenure statute is of general application to public employment and is intended to protect, under certain circumstances, a veteran's employment, office or position. Koribanics v. Clifton Bd. of Educ., 48 N.J. 1, 5 (1966); Dodd v. Van Riper, 135 N.J.L. 167, 174 (E. & A. 1947). However, it is well settled that the general terms of this statute may not properly be applied to employments created by specific enactments which adequately evidence a legislative *109 purpose of excluding them from its tenure protection. Perrella v. Jersey City Bd. of Ed., 51 N.J. 323, 331 (1968); Brennan v. Byrne, 31 N.J. 333, 337 (1960); Barringer v. Miele, 6 N.J. 139 (1951); Smith v. Hackensack City Council, 70 N.J. Super. 209 (App. Div. 1961), certif. den. 36 N.J. 300 (1962). See also Cooper v. Imbriani, 63 N.J. 535, 537 (1973). For example, in Barringer v. Miele, supra, the Veterans' Tenure Act and legislation creating the office of county superintendent of elections were construed together. The superintendent had been conferred broad powers, such as the power to determine the number and compensation of officials and assistants and the power to appoint and remove such officials and assistants as deemed necessary. The legislation specifically placed such employees in the unclassified service. The Supreme Court found such broad authority a manifestation of a legislative purpose to withhold from persons appointed by the superintendent the protection of the Veterans' Tenure Act.
The College was established under the Medical and Dental Education Act of 1970, which became effective on July 1, 1970. N.J.S.A. 18A:64G-1 and N.J.S.A. 18A:64G-2. The Legislature vested in the Board of Trustees the government, control, conduct, management and administration of the College (see N.J.S.A. 18A:64G-4), and conferred upon it broad powers to supervise and conduct the College (N.J.S.A. 18A:64G-6), including the power and duty to
In accordance with the provisions of the State budget and appropriation acts of the Legislature, appoint, upon nomination of the president, such deans and other members of the academic administrative and teaching staffs as shall be required and fix their compensation and terms of employment; [N.J.S.A. 18A:64G-6(h)]
In accordance with the provisions of the State budget and appropriation acts of the Legislature, appoint, remove, promote and transfer such other officers, agents, or employees as may be required to carry out the provisions of this chapter and assign their duties, determine their salaries, and prescribe qualifications for all positions and in accordance with the salary schedules of the State Civil *110 Service Commission wherever possible; [N.J.S.A. 18A:64G-6 (i)]
These provisions of the Medical and Dental Education Act of 1970 evidence a clear legislative purpose and plan to withhold from persons appointed by the Board of Trustees to the academic administrative and teaching staff of Martland Hospital, such as Dr. Morrison, the protection of the Veterans' Tenure Act. The fact that the Board of Trustees did not fix her term of office does not give her the protection of the Act. Cf. Talty v. Hoboken Bd. of Ed., 10 N.J. 69, 71 (1952). We must not lose sight of the fact that the Director of Nursing at Martland Hospital is a highly sensitive and extremely important position. Martland Hospital not only is the principal clinical teaching facility for the College but it also serves as the primary health care facility for a substantial portion of the population of Newark. If Martland Hospital is to properly fulfill these vital roles, the Board of Trustees must have full control over key administrative personnel in such highly sensitive positions as Director of Nursing with broad discretion to hire and fire them unhampered by tenure provisions of the Veterans' Tenure Act.
We are not persuaded by Dr. Morrison's claim that she is protected by N.J.S.A. 18A:64G-23 which provides:
All employees of the New Jersey College of Medicine and Dentistry are hereby transferred to the College of Medicine and Dentistry of New Jersey. Nothing in this act shall be considered to deprive any person of any tenure rights or of any right or protection provided him under any pension law or retirement system or any other law of this State.
This provision applies only to employees of the former New Jersey College of Medicine and Dentistry who were transferred to the college following its reorganization on July 1, 1970. Dr. Morrison was not employed by the former college, her employment as Director of Nursing at Martland Hospital having commenced on June 1, 1971.
*111 We are entirely satisfied that Dr. Morrison's position as Director of Nursing at Martland Hospital is not subject to the Veterans' Tenure Act, and she therefore could be terminated at will by the Board of Trustees. In view of our holding we do not reach the question as to whether there was evidential support for the finding of the Board of Trustees that Dr. Morrison was terminated for good cause.
Accordingly, the decision of the Board of Trustees of the College of Medicine and Dentistry of New Jersey terminating Dr. Morrison as Director of Nursing at Martland Hospital is affirmed.