EMIL HEFTER, RELATOR, v. DORIS W. BRADWAY, DI-
RECTOR OF PUBLIC SAFETY OF THE CITY OF WILD-
WOOD, NEW JERSEY, AND THE CITY OF WILDWOOD,
NEW JERSEY, RESPONDENTS.

---

MARTIN LONG, RELATOR, v. DORIS W. BRADWAY, DI-
RECTOR OF PUBLIC SAFETY OF THE CITY OF WILD-
WOOD, NEW JERSEY, AND THE CITY OF WILDWOOD,
NEW JERSEY, RESPONDENTS.

---

STANLEY ROBERTS, RELATOR, v. DORIS W. BRADWAY, DI-
RECTOR OF PUBLIC SAFETY OF THE CITY OF WILD-
WOOD, NEW JERSEY, AND THE CITY OF WILDWOOD,
NEW JERSEY, RESPONDENTS.

---

JAMES HAMILTON, RELATOR, v. DORIS W. BRADWAY, DI-
RECTOR OF PUBLIC SAFETY OF THE CITY OF WILD-
WOOD, NEW JERSEY, AND THE CITY OF WILDWOOD,
NEW JERSEY, RESPONDENTS.

Argued January 16, 1935—Decided April 15, 1935.

---

Before Justices HEHER and PERSKIE.

For the relators, *Merritt Lane.*

For the respondents, *Harry Tenenbaum* (*William George*, of counsel).

The opinion of the court was delivered by

PERSKIE, J.  *In re Emil Hefter.*  He was appointed a member of the police department on January 15th, 1927, and served continuously until his services were terminated on November 14th, 1934, except that on September 6th, 1932, he and seven others were suspended, and he did not return for duty until June 6th, 1933.

*In re Martin Long.*  He was appointed a member of the police department on December 2d, 1922; is an exempt fireman and worked continuously from the date of his appointment (save for a period of six months, penalty incurred by him, beginning in May, 1932, when he was suspended for insubordination) up to the date of the termination of his services, herein complained of, on September 7th, 1934.  The suspension for insubordination was the outgrowth of the demotion of all officers to the rank of patrolman, in May, 1932, when relator refused, on advice of counsel, to perform the services of a patrolman.  The general reduction in rank, as aforesaid, was sustained by this court.  *Cobb* v. *Wildwood*, 11 *N. J. Mis. R.* 176; see, also, *Ibid.* 171.

*In re Stanley Roberts.*  He was first appointed a member of the police department on September 15th, 1929; is a veteran and served until he was suspended from his employment, on September 6th, 1932, "by reason of economy."  He was reinstated in June, 1933, and continued until his present employment was terminated on September 3d, 1934.

*In re James Hamilton.*  He was appointed a member of the police department in December, 1922, and put on as a regular in 1923, and continued to serve in that capacity until October 12th, 1934, except that on December 9th, 1932, his services were suspended until the 8th or 9th of January, 1933.  He is also an exempt fireman.

Hefter and Roberts were, and Long and Hamilton were

not, among those laid off on September 6th, 1932. (It is stipulated that prior to and at the time such action (termination of relators' services) was taken, the relators were duly appointed policemen of the city of Wildwood.)

The plea of respondents is one of confession and avoidance. The attempted justification thereof is that the action complained of was taken in good faith and in the interest of economy. Have the relators proved lack of good faith or *mala fides* on the part of the respondents in the premises? We think that they have proved bad faith on the part of the respondents. What are the uncontroverted proofs?

The inverse order of seniority followed in 1932 was discarded and not followed as to the relators herein at the time their services were terminated. One Campbell, who was not taken on as a summer policeman until 1934, was made a sergeant; and one Louis Fiocci, who was appointed a summer policeman in 1934, was continued on the regular force; and one Charles Umfreed, appointed as a summer policeman in 1934 (having formerly been a county detective, although he might have been connected with the police department years ago) was made captain of detectives, and one Charles Solomon, who was junior in service to Long and Hamilton, although given a vacation without pay in September, 1934, was reinstated. And if the appointment of these summer officers can be considered, and we do not find it necessary to express any opinion thereon, as new appointments, there clearly was no compliance with chapter 148, *Pamph. L.* 1933, *p.* 299.

Thus two summer policemen were continued in service; two summer appointees were elevated; their salaries were increased; while the relators, regulars on the force, were suspended—their services terminated. The action of respondents cannot be squared or reconciled with the claim of economy—good faith. And the mayor's explanation, although part of it was denied by her, further throws some rather interesting and convincing light on the real reason for respondents' action. She said: "You see, if I had a basket of potatoes and some were specked I would pick them out."

"I am going to get rid of each and every man that does not come my way." Her criticism of Hamilton's political inactivity; "both you and your wife have been very good political workers, and you [Hamilton] particularly have been laying down very much these last two or three elections;" and her objection that Hamilton had talked too much "with the merchants on the boardwalk in reference to the commissioners' appointment of Umfreed;" all tends not only to negative and explode respondents' contention that such action was based on economy and good faith, but rather effectively established bad faith. Nor do we think the marked increase in the population of the municipality during the summer months, commonly characterized as the summer season, or the like decreased population immediately after the summer season was the reason for respondents' action in the premises. The real reason is obvious; it is petty politics. The rights of those protected by tenure, as the relators herein, cannot legally be sacrificed at the altar of politics. The relators have sustained the burden of showing bad faith. *Hunziker* v. *Kent,* 111 *N. J. L.* 565; *Santucci* v. *Paterson,* 113 *Id.* 192. Compare *Ziegler* v. *Hackensack,* 114 *Id.* 186; 176 *Atl. Rep.* 324.

We next approach the problem as to what shall be the form of the relief granted. As indicated, these cases came originally before this court on a rule to show cause why an alternative or peremptory writ of *mandamus* should not issue commanding respondents to reinstate the relators to the police department, restore them to duty and pay them all salaries due them since the termination of their services; or that a writ of *certiorari* should issue to review the action of the director of public safety in terminating the services of the relators.

Relators take the position that they were merely given "a vacation without pay;" respondents, on the other hand, contend that the services of the relators were terminated. If relators' services were illegally terminated, as we hold it to have been, they are entitled to be reinstated. The proper practice to effect that result is *mandamus*. *McCann* v. *New*

*Brunswick,* 73 *N. J. L.* 161; *Ziegler* v. *Hackensack, supra.* See, also, *State* v. *Rahway,* 2 *N. J. Mis. R.* 742. Nor does the fact that relators are given the right by chapter 149 (*Pamph. L.* 1919, *p.* 323), to recover their salaries for the period covered by such illegal dismissal affect their right to relief by *mandamus. State* v. *Rahway,* 3 *N. J. Mis. R.* 201.

Counsel for respective parties have filed, with the consent of court, a written stipulation that these cases be decided on the merits as if they were before us on a proper record. (For proper practice on appeal see *Advance Development Corp.* v. *Jersey City,* 105 *N. J. L.* 234; *Ford Motor Co.* v. *Fernandez,* 114 *Id.* 202.)

Leave therefore is hereby given to counsel for relators to frame a proper record; and on the record so framed, a per-emptory writ of *mandamus* will issue commanding respondents to reinstate each of the relators to membership in the police department of the city of Wildwood; restore each to duty; and that each relator be paid all salary due him since the termination of his services.