THE CIVIL SERVICE COMMISSION OF NEW JERSEY AND ALLAN H. SWAN, RELATORS, v. RALEIGH S. RIFE, DIRECTOR OF THE DEPARTMENT OF REVENUE AND FINANCE OF THE TOWN OF NUTLEY, RESPONDENT.

Argued May 5, 1942—Decided July 22, 1942.

504

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the relator Civil Service Commission of New Jersey, *David T. Wilentz,* Attorney-General, and *Harry A. Walsh,* Assistant Attorney-General.

For the relator Allan H. Swan, *Samuel B. Feld.*

For Chester H. Bellows, *amicus curiæ, Jerome C. Eisenberg.*

For the respondent, *William F. Gorman* (*William F. Gorman,* of counsel).

BROGAN, CHIEF JUSTICE. This case is before us on an alternative writ of *mandamus* allowed on the relation of the Civil Service Commission of New Jersey and Allan H. Swan

(the real party in interest) directed to Raleigh S. Rife, Director of the Department of Revenue and Finance of the Town of Nutley, New Jersey. The latter filed a return to the writ. The relators have demurred. The issue is whether or not Mr. Swan, a disabled veteran, is entitled to the post of collector of delinquent accounts in the Department of Revenue and Finance of Nutley. That municipality has adopted our Civil Service Act (*N. J. S. A.* 11:3-1, *et seq.*).

It appears that the Civil Service Commission was requested by Director Rife to hold a competitive examination to determine eligibles for appointment for the said post of Collector "according to the specifications and adoption of the Civil Service." Accordingly the Civil Service Commission conducted an examination. The relator Swan passed the examination with a gross rating of 75.39 per cent. The eligibles certified by the Civil Service Commission after the examination were Messrs. Swan, Dolan and Bellows, in the order named. Swan was placed first on the list because he is a disabled veteran—although the others certified had received a higher mark in the examination. Mr. Rife, the appointing power, did not appoint the disabled veteran but instead appointed Mr. Bellows, a non-veteran. Under our law a veteran with a record of disability incurred in the line of duty is entitled to certain rights and preferences (see *N. J. S. A.* 11:27-3 to 11:27-5).

Prior to the appointment of Bellows and on June 17th, 1941, Mr. Rife was cited by the Civil Service Commission to show cause why the veteran certified as eligible was not appointed (*N. J. S. A.* 11:27-5, as amended *Pamph. L.* 1938, ch. 381, *p.* 952, § 4). After the hearing the Commission concluded that Mr. Rife had not shown good cause for not appointing Swan and on July 1st, 1941, ordered his appointment. Rife refused to obey the order of the Civil Service Commission, appointed Bellows on July 3d, 1941, and on September 11th, in reply to inquiry from the Attorney-General, wrote a letter stating his reason for refusing to honor the order of the Commission. He further said that he had appointed "another successful candidate * * * for the vacancy; he has taken the oath of office, and is presently

under leave of absence." On this fact showing we allowed an alternative *mandamus*.

Mr. Rife, in his return to the writ, admits that he requested the Civil Service Commission to hold the competitive examination to determine eligibles for appointment to the vacant post; that the Civil Service Commission did hold such examination; that the names of the three eligibles were certified; that Mr. Swan was the only veteran among them; that he did not appoint Swan but rather Bellows who, he says, took the oath of office on July 3d, 1941, and has been on leave of absence since that time down to the present, and pending the determination of this controversy.

The return disputes relator's statement that Swan is entitled to be appointed to the position, admits the hearing before the Civil Service Commission on its rule to show cause, concedes that the Commission made an order in the premises and that respondent did not comply with it, and states that in answer to the Attorney-General's inquiry about the matter he wrote him on September 11th, 1941, giving his reason for not appointing Swan which, in brief, was that Swan did not have the preliminary qualifications specified for the position and therefore should not have been permitted to take the examination; that prior to the hearing before the Civil Service Commission on this matter, and on May 15th, 1941, Director Rife interviewed Swan and concluded that he "lacked the business capacity essential to fill said position * * *." The return concludes by challenging the jurisdiction of the Civil Service Commission over the subject-matter and the parties and asserts that both Swan and the Commission are guilty of laches. To all of which the relators demurred.

Our statute (*N. J. S. A.* 11:27-4, as amended *Pamph. L.* 1938, *ch.* 381, *p.* 952, § 3) ordains in unmistakable terms, that

"The Civil Service Commission shall certify to the appointing authority the names and addresses of the three candidates standing highest upon the register for each position to be filled, and such appointing authority shall select one of the three so certified; provided, however, that whenever the name or names of a veteran or veterans shall be among those certi-

fied to the appointing authority the choice of the appointing power shall be limited to the veteran or veterans whose name or names are included in such certificates, regardless of position on the list."

This statutory mandate, without more, would seem to require the appointment of Swan. A veteran has preference over others who pass civil service examinations as is evidenced by the very next section of the statute, *supra,* which provides as follows:

"The fact that a veteran has successfully passed the prescribed examination or test and that his name has been placed upon the employment list and certified as eligible for appointment is evidence that such veteran is qualified to perform all the duties of the position and as entitling him to appointment. Before such appointive power in such case shall select a non-veteran and leave unappointed any veteran who has been certified as being eligible, such appointive power shall show cause before the Civil Service Commission why such veteran should not be appointed, at which time such veteran or veterans may be privileged to attend and present evidence. Unless good cause be then shown, said Civil Service Commission shall order immediate appointment of such veteran. Said Civil Service Commission shall be the sole judge of the facts constituting such qualifications. (*R. S.* 11:27-5, as amended *Pamph. L.* 1938, *ch.* 381, *p.* 952, § 4)."

Looking at the fact situation before us in the light of the statute, *supra,* it is clear that certification of a veteran by the Civil Service Commission is *prima facie* evidence of his ability to fill the position and that before a non-veteran may be preferred to a veteran who has been certified, the appointing power must show cause why such veteran should not be appointed. Nor is it to be disputed that unless good cause be shown the Civil Service Commission is empowered to order the immediate appointment of the veteran so certified. Now it cannot be gainsaid that Swan was a veteran; that he was certified; that he was not appointed; that the Commission, after hearing the parties, on order to show cause determined the issue in favor of the veteran and against the appointing power and ordered the appointment of Swan. From all the

foregoing it follows that the conduct of Mr. Rife was in contravention of the statute and that he should be ordered forthwith to appoint the relator Swan unless there be legal justification, on the merits or for technical reasons to support Mr. Rife's position.

We turn to the points that are made in the briefs for the respondent Rife and the respondent Bellows. For the latter counsel requested permission to file a brief, as amicus curiæ, and we agreed to receive and consider it.

The respondent Rife raises a question on the adjective side that we think calls for discussion at this juncture. It is his third and fourth point—that *mandamus* is not the proper remedy but that *quo warranto* should have been invoked. This argument proceeds upon the assumption that the post of collector of delinquent accounts is an office under the statute. We are of the opinion that the post in question is not an office. An office is a place in the governmental system created or recognized by the law of the state which either directly or by delegated powers assigns to the incumbent the continuous performance of *certain permanent public duties.* (Italics supplied.) *Fredericks* v. *Board of Health,* 82 *N. J. L.* 200. The position (and we use the word in its ordinary, not its legal sense) has certain of the analogues of an office but it is clear that the duties to be performed are of a subordinate nature and are done under the supervision of an official—in this case the collector of the municipality (*Cf. N. J. S. A.* 54:4-86.) The duties assigned to the position, prescribed and advertised by the Civil Service Commission are as follows: "Under supervision, to be responsible for the collection of delinquent water, real and personal property taxes and to perform related tasks *as assigned.*" (Italics ours.) These then were the services expected of a person appointed. They were to be done under supervision, were apparently ministerial, without discretion lodged in or assigned to the appointee in the performance of the task. These are not the indicia of an office but of a lesser place in governmental service. An action in *quo warranto* applies only where a disputed office is at stake.

We turn to the argument as to whether or not *mandamus*

be the proper remedy. The argument rests upon the assumption that the place at stake is an office. This, as we have said, is not the fact. But even if the post were an office, still the argument is not valid. The appointment of Bellows was wholly ineffectual. This is not a case of ousting from office by *mandamus* a person who is in by color of right. Bellows has no right under the facts exhibited. As a matter of law his pretended appointment was a nullity. Compare *Mason* v. *Paterson,* 35 *N. J. L.* 190. *Mandamus* lies to compel the performance of a duty which results from operation of law as well as the performance of acts purely ministerial. Here we have a valid order of a competent tribunal—to wit, the Civil Service Commission, which is not alone palpably disregarded but affirmatively disobeyed. This order stands unimpeached, even unchallenged by any orderly review. Swan was not only not appointed but another in his place and stead was named without legal warrant therefor. The fact that Bellows was appointed does not give him the post in question by any color of right. If it did the statute, the hearing on the rule to show cause, and the order in the premises would amount to nothing more than useless and empty gestures. Bellow's occupancy of the post, if it can be called that, was merely colorable and did not bestow him even a *de facto* right to remain as against Swan because there is no legal warrant for the action of the appointing power. Compare *Leeds* v. *Atlantic City,* 52 *N. J. L.* 332.

It is further said that the relators are guilty of laches. This argument rests on the fact that Swan took no action "to assert his rights for a period of four and a half months." This point has no merit whatever. It is true that the order of the Civil Service Commission to Mr. Rife was made on July 1st, 1941. He should have obeyed it or taken action to challenge it. The order might have been reviewed by *certiorari*. Certainly Swan had no duty in the premises at that juncture. The order favored him. Thereafter the Civil Service Commission, its order having been contemned, referred the matter to the Attorney-General who wrote Mr. Rife about the matter (the date of his letter does not appear) ; and Mr. Rife responded on Sepember 11th, 1941. Thereafter, on

November 12th, 1941, the moving affidavit to initiate this proceeding was signed by the secretary of the New Jersey Civil Service Commission. The writ was allowed on December 10th, 1941. No one suffered by the delay except perhaps Mr. Swan. Certainly the municipality did not suffer because after his appointment Mr. Bellows was given and still enjoys a leave of absence. There is no laches here.

The respondent Rife also contends that the statute, *supra* (*i. e.,* 11:27-4, as amended) is unconstitutional in that it violates article 4, section 7, paragraph 11 of our fundamental law concerning private, local or special laws. It is said that the statute in question regulates the internal affairs of the municipality. This argument is without merit. The act is neither private nor special. It comprehends all persons who are veterans in all municipalities which have adopted civil service. It is restricted to no locality and operates generally and equally upon all who are its objects.

Turning to the brief for Mr. Bellows, the following argument is made: that the Civil Service Commission had no jurisdiction over the subject-matter or the parties, and that the order of the Commission is a nullity because "it was not a determination by the entire Commission." To support the first point it is said that Swan did not possess the minimum education requirement or the necessary experience in collection of accounts. But the statute—11:27-5—provides that the Civil Service Commission shall be the sole judge of the facts constituting such qualifications. Its finding in this particular stands unchallenged and unimpeached. The respondents may themselves be in laches on this point (although we do not pause to consider the question) but, however that may be, the attack now is purely collateral. But the complete answer to the proposition that Swan did not have the preliminary qualifications when he entered upon the examination is that this point does not go to jurisdiction.

The final argument made for respondent Bellows is that the hearing in this cause before the Commission was held before a single Commissioner and that under the doctrine of *Redcay* v. *State Board of Education,* 128 *N. J. L.* 281, the proceeding before such single Commissioner was a nullity.

In the Redcay case this court held that where the State Board of Education merely adopted findings of a committee of its members such action was invalid. But that case is no authority for the point made here. The Civil Service Act (*Cf. N. J. S. A*. 11:1-16) expressly permits the Commission to act as a body or through a single member. The fact that the hearing on the qualifications of Swan was had before a single member of the Commission does not appear, strictly speaking, in the record. True, that circumstance may be found in an exhibit attached to the moving affidavit but this affidavit and the exhibits which go to complete it are not part of the record. They expired with the granting of the writ and no longer have efficacy to prove anything. In the amended return to the writ we find a copy of this order of the Civil Service Commission of July 1st, 1941, but there is nothing in it to indicate that the order was not the order of the entire Commission after a review of the facts and circumstances. The point is not cognizable in any event.

A peremptory *mandamus* will be awarded to the relators, with costs.