CYRIL P. BRENNAN, PLAINTIFF-APPELLANT, v. BRENDAN T. BYRNE, DEPUTY ATTORNEY GENERAL, ETC., *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued October 27, 1959—Decided January 11, 1960.

334

*Mr. Philip J. Mylod* argued the cause for appellant (*Messrs. Mylod & Mylod,* attorneys; *Mr. James P. Mylod,* of counsel).

*Mr. John F. Crane,* Deputy Attorney General, argued the cause for respondents David D. Furman, Attorney General of New Jersey and Brendan T. Byrne, Prosecutor, Essex County (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

*Mr. John Tomasin,* Attorney for the Department of New Jersey, Disabled American Veterans, filed a brief *amicus curiae.*

The opinion of the court was delivered by

JACOBS, J.   The Law Division entered a judgment dismissing the plaintiff's complaint and the plaintiff appealed to the Appellate Division.   We certified the appeal on our own motion while it was pending in the Appellate Division.

On or about July 15, 1955 Essex County Prosecutor Webb appointed the plaintiff as a county investigator and a resolution approving the appointment was adopted by the Board of Chosen Freeholders of Essex County.   The plaintiff served as a county investigator until his services were terminated by the defendant Brendan T. Byrne, now Essex County Prosecutor.   On March 16, 1959 the plaintiff filed his Law Division complaint in lieu of prerogative writ, alleging that as a veteran he was entitled to the tenure protection afforded by *N. J. S. A.* 38:16-1 and seeking reinstatement with back

pay. In a letter opinion dated April 13, 1959 Judge Coolahan expressed the view that under *N. J. S.* 2*A*:157–10 the plaintiff's position as a county investigator was subject to the pleasure of the prosecutor and to his right of removal and ordered the dismissal of the complaint. The plaintiff's appeal is from the ensuing judgment which was filed on April 16, 1959.

In 1931 the Legislature adopted a supplement to earlier enactments relating to county detectives in counties of the first class (see *L.* 1905, *c.* 190; *R. S.* 2:181–1); it expressly authorized prosecutors in counties of the first class to appoint county investigators in addition to previously authorized county detectives; and it provided that county investigators shall hold office at the pleasure of the prosecutor and shall be excluded from the classified service under the Civil Service Act. See *L.* 1931, *c.* 164. A statement attached to the bill which, with phraseology clarifications, became *L.* 1931, *c.* 164, noted that the prosecutor's appointees would hold office "only during the pleasure of the prosecutor" and that the bill gave to the prosecutor the right to appoint during his term "persons in whom he has that degree of confidence resulting from personal, intimate knowledge." In *L.* 1933, *c.* 210 the Legislature provided that any veteran employed by the State or a department of a first class county for a stated period of years including prescribed length of service as a county investigator shall be eligible to fill a vacancy in the office of county detective and that upon his appointment by the prosecutor he shall be entitled to the benefits of the act regulating the employment, tenure and discharge of certain officers and employees of the State and the various counties and municipalities and providing for a civil service commission (*L.* 1908, *c.* 156). In 1937 the aforementioned provisions were carried over into the Revised Statutes. See *R. S.* 2:181–6, 2:181–4. In 1951 the Legislature adopted an act revising the law concerning county detectives and county investigators and repealing certain enactments including *R. S.* 2:181–6 and 2:181–4. See *L.* 1951, *c.* 274;

*N. J. S.* 2A :157–1 *et seq.* This revision provided for the appointment of county detectives in the classified service of the civil service and for the appointment in the unclassified service of county investigators to serve at the pleasure of the prosecutor and subject to removal by him. *L.* 1951, *c.* 274, *p.* 944; *N. J. S.* 2A :157–10. In 1952 the Legislature again adopted an act declaring veterans employed as county investigators to be eligible, after stated periods of service, for appointment as county detectives in the classified service. See *L.* 1952, *c.* 79.

All of the foregoing enactments were subsequent to the adoption of our present Veterans' Tenure Act. *L.* 1907, *c.* 14; *N. J. S. A.* 38 :16–1. They evidence to us the clear legislative purpose and plan of affording to the county prosecutor a confidential investigatory staff serving at his pleasure and removable at his will notwithstanding the terms of any earlier tenure enactments. Thus the 1931 enactment pointedly stipulated not only that the county investigator should hold office at the prosecutor's pleasure but also that he should be excluded from the classified service which would have given him tenure protection under the Civil Service Act (*L.* 1931, *c.* 164); the 1933 enactment (as well as *L.* 1952, *c.* 79) sought to give veterans an advantage but, significantly, not by providing for any tenure as county investigators—it simply declared them eligible for appointment as county detectives with tenure protection under the Civil Service Act (*L.* 1933, *c.* 210); and while the comprehensive 1951 revision continued the protection of county detectives under the Civil Service Act, it deliberately reaffirmed the legislative intent of withholding tenure protection to county investigators by placing them in the unclassified service of the civil service (see *N. J. S. A.* 11 :4–4, *subd. s; Walsh v. Dept. of Civil Service,* 32 *N. J. Super.* 39, 43 (*App. Div.* 1954), certification granted, 17 *N. J.* 182 (1955)) and directing that they shall serve at the pleasure of the prosecutor and be subject to removal by him. See *L.* 1951, *c.* 274, *p.* 944; *N. J. S.* 2A :157–10.

■ It is well settled that the general terms of *N. J. S. A.* 38:16–1 may not properly be applied to employments under later specific enactments which adequately evidence a legislative purpose of excluding them from its tenure protection. See *Cetrulo v. Byrne,* 31 *N. J.* 320 (1960); *Barringer v. Miele,* 6 *N. J.* 139 (1951); *Carluccio v. Ferber,* 18 *N. J. Super.* 473 (*App. Div.* 1952); *McCallion v. Allan,* 134 *N. J. L.* 322 (*Sup. Ct.* 1946); *Ackley v. Norcross,* 122 *N. J. L.* 569 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 133 (*E. & A.* 1940); *Rotherham v. Grece,* 14 *N. J. Misc.* 164 (*Sup. Ct.* 1936); *Di Angelo v. Keenen,* 112 *N. J. L.* 19 (*Sup. Ct.* 1933), affirmed 115 *N. J. L.* 507 (*E. & A.* 1935). In the *Miele* case the plaintiffs, who were discharged by the Essex County Superintendent of Elections and Commissioner of Registration, claimed protection under the Veterans' Tenure Act; their claim was rejected by this court in an opinion by Justice Case which pointed out (1) that the Legislature had placed in the hands of the superintendent, large and unusual determinative powers "including the hiring and removal, and the fixing of the number and the compensation of his assistants" and (2) that "the Legislature may by the manner in which it establishes or reconstructs a public office and by the character of authority which it gives in the supervision thereof indicate a purpose to exclude the employees from the application of the Veterans' Tenure Act." In the *Allan* case the former Supreme Court rejected a claim of veteran's tenure by a discharged employee of the Hudson County Board of Elections; Justice Colie referred to the statutory provisions which authorized the superintendent to appoint and remove assistants and placed them in the unclassified service of the civil service; and he found it to be manifest "from a reading of the various enactments dealing with the office of superintendent of elections" that the Legislature intended to give the superintendent a power of removal, free from the restraints of the Veterans' Tenure Act. In the *Norcross* case the court rejected an under-sheriff's claim of tenure as a veteran and

exempt fireman. Justice Porter referred to the statutory provisions which authorized the appointment of under-sheriffs and placed them in the unclassified service of the civil service and expressed the view that "the legislative intention was to give the sheriff free rein to control the terms of office of his under-sheriffs, to appoint and remove at his pleasure." In the course of his opinion he contrasted the general terms of the tenure acts with the specific terms of the acts relating to under-sheriffs, noting:

"Moreover, the statutes relating to tenure, *supra*, upon which relator relies, are general, while those dealing with the office of under-sheriff are special and specifically cover the subject. The rule is that where there is any conflict between a general and specific statute covering a subject in a more minute and definite way the latter will prevail over the former and will be considered an exception to the general statute. 59 *C. J.* 1056." 122 *N. J. L.*, at *page* 572.

█ The plaintiff places reliance on cases such as *Townsend v. Boughner*, 55 *N. J. L.* 380 (*Sup. Ct.* 1893), where the court, in sustaining a claim of veteran's tenure by the superintendent of buildings in the City of Newark, indicated that "an office held during the pleasure of another" is without fixed term within the contemplation of the tenure act. See *DeVita v. Housing Authority of City of Paterson*, 17 *N. J.* 350 (1955). The *Townsend* case did not consider and was not concerned with an employment under a statutory enactment embodying adequate evidence of a legislative intent to afford a power of removal free from the provisions of earlier tenure statutes. Here we are concerned with such an enactment and in view of its history and terms we are satisfied that the Law Division properly rejected the plaintiff's tenure claim; its judgment is in all respects:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.