62 N.J. Super. 148 (1960)
162 A.2d 140
CHARLES GOBAC, PLAINTIFF,
v.
WILLIAM HOWE DAVIS, DIRECTOR, DIVISION OF ALCOHOLIC BEVERAGE CONTROL IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 8, 1960.
*151 Mr. Leo Yanoff appeared for plaintiff (Messrs. Green & Yanoff, attorneys).
Mr. Samuel B. Helfand appeared for defendant (Mr. David D. Furman, Attorney General, attorney).
COLLESTER, J.S.C.
The plaintiff, Charles Gobac, brought suit by complaint in lieu of prerogative writs seeking to set aside a written resignation executed by him as an investigator of the Division of Alcoholic Beverage Control of the Department of Law and Public Safety, to compel his reinstatement to his former position and to require that he be reimbursed for the salary lost during a period of wrongful discharge.
Plaintiff is an honorably discharged veteran. He was appointed as an investigator in the Division on September 9, 1955. Under the statute establishing his said position, N.J.S.A. 33:1-4(d), he was removable by the Director of the Division at will during his first three years of service and on and after September 9, 1958 he was to serve during good behavior and could not be removed except for cause.
The defendant is William Howe Davis, Director of the Division of Alcoholic Beverage Control (A.B.C.) of the Department of Law and Public Safety.
*152 On September 14, 1959 the plaintiff telephoned Emerson Tschupp, Deputy Director of the Division, requesting an interview to present certain complaints concerning working conditions at the Nixon (Edison Township) office. One hour later he received a telegram from Deputy Director Tschupp directing him to report to Tschupp on Wednesday morning, September 16 at the Newark office.
On the date scheduled the plaintiff appeared at the office of the A.B.C. for the scheduled conference with Deputy Director Tschupp. The entire conference lasted approximately 50 minutes.
At the outset of the conference, for a period of about 15 minutes, the plaintiff presented complaints concerning his working conditions and in particular those pertaining to his immediate district supervisor.
Deputy Director Tschupp then stated it was a case of "mutual dissatisfaction" and that Director Davis had received information which had led the Director to conclude that sufficient cause existed for the dismissal of the plaintiff as an investigator. The Deputy Director stated that he had been instructed by the Director to have the plaintiff come in to offer him an opportunity to resign rather than being dismissed.
The plaintiff, who testified that he was shocked by this request, asked the reason therefor and was informed by the Deputy Director that he had committed the most unpardonable sin in that he had "blown the whistle" on an investigation by informing a licensee of an investigation being conducted by the Division, as a result of which it was aborted.
The plaintiff denied the charge and demanded to know what investigation was referred to; the location of the licensee; the source of the Director's information; whether or not it was an investigation to which he had been assigned; whether it was an investigation which had been conducted in Franklin Township or New Brunswick (his area), and similar inquiries. Deputy Director Tschupp refused to give him any information or details concerning the charge but *153 stated it was not an investigation to which the plaintiff had been assigned, nor was it in the municipalities mentioned, and refused to name either the licensee or the source of his information. When the plaintiff demanded to know how he could tip off a licensee if he was not assigned to the case, Deputy Director Tschupp stated, "You have eyes and ears; you might have seen the copy of the assignment as other agents have in the past. We are not saying you have received any money or gifts for this tip-off."
Deputy Director Tschupp informed the plaintiff that he had a choice of either resigning or being dismissed. He further explained to the plaintiff the benefits of submitting his resignation, namely, that the record would only show a resignation, no matter who inquired, while, if he was dismissed the record would show the reasons for the dismissal and would have to be furnished to anyone who inquired, particularly prospective employers. Mr. Tschupp told plaintiff of cases of other men who had been dismissed and their difficulty in securing employment because of the existing record of dismissal.
When plaintiff asked what the record would show if he was dismissed, Deputy Director Tschupp told him it would be in formal language consisting of "violation of oath of office, disrespect for superior officers, misconduct in office, and possibly others they might work up as they analyzed it more carefully, but that the principal factor would be the tipoff of a certain licensee with respect to a certain investigation."
The plaintiff asked to see Director Davis but was advised by Deputy Director Tschupp that he could not do so for the reason that the Director had considered the information and had evaluated it; had come to an administrative determination, and had told him (Tschupp) to pass the message on to the plaintiff; therefore there was no point in seeing the Director.
The plaintiff then asked for time to consider, stating that it was unfair for a man to consider the matter in such a *154 short while. Deputy Director Tschupp told him he had been instructed by the Director to obtain plaintiff's decision, and that he would either have to resign "right now" before he left the office or be dismissed. He told plaintiff that if he submitted his resignation, the Director would make it effective on October 2, 1959, two weeks hence, while if he did not resign his dismissal would be effective as of the time the Director signed it, either that day or the following day.
During the conference the plaintiff expressed concern about the effect of either a resignation or a dismissal upon his wife and four children, his loss of employment, and of how he would subsist during the coming winter months. He expressed concern as to the effect of such an action on his political future since he held a minor political office in his home town. While denying the charge made, he asked whether or not he could be suspended from office rather than be dismissed, but was told that such a disposition was not possible.
In the course of the discussion Deputy Director Tschupp took from the drawer of his desk a typed letter of resignation which he had prepared two days before and proffered it to the plaintiff.
At the conclusion of the conference the plaintiff signed the resignation. After he left the office he conferred with an attorney and on September 18 a letter was sent to Director Davis stating that the plaintiff's resignation signed on September 16 to be effective October 2 was withdrawn and advising that the plaintiff would report for whatever duties would be required of him. The letter further pointed out that Mr. Gobac was a veteran with an honorable discharge and had tenure by reason of the length of his employment with the Division. Thereafter a series of letters was interchanged between the plainitff's attorney and the defendant, the former demanding that the plaintiff be granted a hearing after charges were preferred against him and charging that the resignation was secured from plaintiff by duress; the *155 latter contending that the resignation was voluntary and had been accepted on September 16, 1959, the date it was executed, to be effective on October 2, 1959. The defendant refused to grant plaintiff a hearing and removed him from the Division's payroll on October 2, 1959.
The contention of the plaintiff is that the resignation he signed on September 16, 1959 was obtained by duress and thus was void; that the defendant wrongfully terminated plaintiff's employment on October 2, 1959 without a hearing and that the defendant should be compelled to restore plaintiff to his position and to reimburse him for salary lost subsequent to October 2, 1959.
The defendant denies that the resignation was obtained by duress and contends that it was voluntary; denies that plaintiff's employment was illegally terminated and that there is any liability to plaintiff for salary claimed.
The first issue raised on behalf of the defendant is a contention that the present procedure invoked by the plaintiff, namely, a complaint in lieu of prerogative writs, is not maintainable to cancel a resignation.
It must be noted that the relief sought is not only to void the resignation on the ground of duress but to restore plaintiff to his status as an investigator as a result of an alleged unlawful termination of his services.
The relief sought is in the nature of a mandamus to compel the defendant to perform a ministerial duty. If the plaintiff's services were illegally terminated and he is entitled to reinstatement, the proper procedure to effect that result is mandamus. Hefter v. Bradway, 115 N.J.L. 81 (Sup. Ct. 1935); Ziegler v. Hackensack, 114 N.J.L. 186 (E. & A. 1934); State ex rel. Jardot v. City of Rahway, 2 N.J. Misc. 742 (Sup. Ct. 1924) (overruled on other grounds by De Marco v. Bergen County, 21 N.J. 136, 142 (1956)); McCann v. New Brunswick, 73 N.J.L. 161 (Sup. Ct. 1905). See also Gallena v. Scott, 11 N.J. 231, 238 (1953); Civil Service Commission v. Rife, 128 N.J.L. 503, 509 (Sup. Ct. 1942).
*156 The next issue raised is a contention by the defendant that the proceeding cannot be maintained because it is a suit against the State without its consent. With such contention this court cannot agree. In Bruder v. Teachers' Pension and Annuity Fund, 27 N.J. 266 (1956) the court stated, at page 270:
"It is well settled that the doctrine of sovereign immunity will not bar a prerogative writ proceeding commenced to compel the exercise of a ministerial duty imposed by law upon a state official. Jersey City v. Zink, 133 N.J.L. 437 (E. & A. 1945); Duke Power Co. v. Patten, 20 N.J. 42 (1955); cf. Gallena v. Scott, 11 N.J. 231 (1953). And it makes no difference in this regard, that the duty is the payment of money."
The relief sought here is to compel the exercise of a ministerial duty imposed by law upon a state official, namely, to compel the defendant, Director of the Division of Alcoholic Beverage Control, to reinstate the plaintiff to his position as an investigator who is protected by tenure, viz., removable only for cause.
The next question involved is  Was the resignation of the plaintiff under all the facts and circumstances of this case a voluntary act on the part of the plaintiff in contemplation of law or was it made under duress? In 2 Restatement of the Law of Contracts, sec. 492, p. 938, duress is defined as follows:
"Duress in the Restatement of this subject means (a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or (b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."
In commenting on the foregoing section (see comment a, page 939) the authors say:
"Duress consists of threats that cause such fear as to induce the exercise of volition, so that an undesired act is done. In duress *157 of this latter type neither the threats alone nor the fear alone is duress. The same threats may cause fear in one person and not in another. The test of what act or threat produces the required degree of fear is not objective. The threat need not be such as would put a brave man, or even a man of ordinary firmness, in fear. The question is rather, did it put one entering into the transaction in such fear as to preclude the exercise by him of free will and judgment."
The foregoing was adopted and cited with approval in Miller v. Eisele, 111 N.J.L. 268, 275 (E. & A. 1933) and Rubenstein v. Rubenstein, 20 N.J. 359 (1956).
In Rubenstein, supra, 20 N.J., at page 365, the court said:
"Duress in its more extended sense means that degree of constraint or danger, either actually inflicted or threatened and impending, sufficient in severity or in apprehension to overcome the mind or will of a person of ordinary firmness, according to the earlier rule, but now, by the weight of modern authority, such as in fact works control of the will. * * *

* * * * * * * *
In the modern view, moral compulsion or psychological pressure may constitute duress if, thereby, the subject of the pressure is overborne and he is deprived of the exercise of his free will. The question is whether consent was coerced; that is, was the person complaining `induced by the duress or undue influence to give his consent, and would not have done so otherwise.' Williston on Contracts (rev. ed.) section 1604. See Restatement, Contracts, section 492. * * * the tendency of the more recent cases, and the rule comporting with reason and principle, is that any `unlawful threats' which do `in fact overcome the will of the person threatened, and induce him to do an act which he would not otherwise have done, and which he was not bound to do, constitute duress.'"
Discussing the test to be invoked in the determination of whether or not duress was employed, the court said in the Rubenstein case, supra, 20 N.J., at page 366:
"It would seem to be basic to the legal concept of duress, proceeding as it does from the unreality of the apparent consent, that the controlling factor be the condition at the time of the mind of the person subjected to the coercive measures, rather than the means by which the given state of mind was induced, and thus the test is essentially subjective."
*158 The court went on to cite with approval the following language from Fountain v. Bigham, 235 Pa. 35, 84 A. 131 (Sup. Ct. 1912):
The test of duress is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed  the fear which made it impossible for him to exercise his own free will. * * * The threat must be of such a nature and made under such circumstances as to constitute a reasonable and adequate cause to control the will of the threatened person, and must have that effect; and the act sought to be avoided must be performed by such person while in such condition.
An essential element of duress is that the threat or pressure exerted upon the individual is wrongful. Here in Rubenstein, supra, once more the court states (20 N.J., at page 367):
"But the pressure must be wrongful, and not all pressure is wrongful. And means in themselves lawful must not be so oppressively used as to constitute, e.g., an abuse of legal remedies. Williston on Contracts, sections 1606, 1607. The act or conduct complained of need not be `unlawful' in the technical sense of the term; it suffices if it is `wrongful in the sense that it is so oppressive under given circumstances as to constrain one to do what his free will would refuse.' First State Bank v. Federal Reserve Bank, 174 Minn. 535, 219 N.W. 908, 61 A.L.R. 467 (Sup. Ct. 1928). See First National Bank of David City v. Sargent, 65 Neb. 594, 91 N.W. 595, 59 L.R.A. 296 (Sup. Ct. 1902). It was said in a recent case that duress is tested, not by the nature of the threats, but rather by the state of mind induced thereby in the victim. Ensign v. Home for Jewish Aged, 274 S.W.2d 502 (Mo. App. 1955).
And the `state of a man's mind is as much a fact as the state of his digestion.' Edgington v. Fitzmaurice, L.R. 29, C.D. 483; 55 L.J. Ch. 650 (1855), Bowen, L.J."
Tested by the foregoing principles do we find duress exerted by the Deputy Director of the Division of Alcoholic Beverage Control upon the plaintiff such as would warrant voiding the resignation signed by the plaintiff?
It is apparent that plaintiff assumed that he was called to the A.B.C. office on September 16, 1959 to be given an opportunity to register his personal grievances. At the outset *159 of the conference with the Deputy Director he did just that. Then suddenly the plaintiff was presented with a request that he submit his resignation or he would be summarily dismissed.
When informed that the basis for such a demand was a charge that he had "tipped off" a licensee about a departmental investigation, he denied the charge.
When he sought the details of the alleged offense, he was refused any information pertaining to the same.
When he sought to confer with the Director of the A.B.C., he was refused such opportunity and informed that the Director had already come to an "administrative decision."
When he sought time to consider the matter, he was told that he must either resign at once, before he left the office, or be dismissed.
When he inquired as to what the basis of a dismissal would be, he was informed of several charges without any facts relating thereto and also told that there would "possibly be others they might work up as they analyzed it more carefully."
He was advised of the benefits of resigning instead of being dismissed and informed that a dismissal would reveal to any member of the inquiring public, including any prospective employers, the details of the reasons for his dismissal. He was informed of the difficulties in securing employment which former investigators had been required to endure as a result of a dismissal.
At no time was any intimation given to him that he would be granted a hearing of any sort by the Director. In fact the defendant's contention in this case seems to be that the plaintiff was not entitled to a hearing of any type and that the reasons for dismissal, as prepared by the Director, would be the inevitable termination of the matter.
Confronted with this situation the plaintiff, who professed his innocence of any violations of regulations, testified that he was "shocked." The Deputy Director concedes that the plaintiff was "disturbed."
*160 Plaintiff testified that during this conference  about 35 minutes being devoted to the subject matter  he was greatly concerned about the effects of both a resignation and a dismissal upon his future welfare; the need to support his wife and children; his worry about securing other employment, both immediately and in the future, and his concern about its effect upon his political interests.
Unquestionably his present frustration in endeavoring to learn of the details of charges made against him and his inability to offer a defense thereto likewise preyed heavily upon his mind.
It is the opinion of this court that the plaintiff was subjected to such psychological pressure and compulsion in the situation in which he found himself that it caused such fear on his part as to preclude the exercise by him of free will and judgment.
I have stated before that an essential element of duress is that the threat or pressure exerted upon the individual must be wrongful. Was the pressure exerted by the Deputy Director wrongful in the instant case?
The plaintiff, concededly an honorably discharged war veteran, contends that it was wrongful because he was protected by the Veterans' Tenure Act, N.J.S.A. 38:16-1 et seq. He contends that since he was originally appointed to an indefinite term he cannot be removed except for good cause shown after a fair and impartial hearing and after charges shall be preferred against him.
With this contention this court cannot agree. The plaintiff was appointed as an investigator under R.S. 33:1-4(d) as amended, a statute enacted subsequent to the Veterans' Tenure Act. A review of such statute and its amendments indicates a clear legislative purpose of granting to the Director of Alcoholic Beverage Control a confidential investigatory staff serving at his pleasure and removable at his will during the first three years of such service and thereafter removable for cause. It is well settled that the general terms of N.J.S.A. 38:16-1 may not properly be *161 applied to employment under later specific enactments which adequately evidence a legislative purpose of excluding them from its tenure protection. Cetrulo v. Byrne, 31 N.J. 320 (1960); Brenman v. Byrne, 31 N.J. 333 (1960); Barringer v. Miele, 6 N.J. 139 (1951).
In Brenman v. Byrne, supra, the court cited with approval the language of Justice Porter in Ackley v. Norcross, 122 N.J.L. 569, 572 (Sup. Ct. 1939):
"Moreover, the statutes relating to tenure, supra, upon which relator relies, are general, while those dealing with the office of under-sheriff are special and specifically cover the subject. The rule is that where there is any conflict between a general and specific statute covering a subject in a more minute and definite way the latter will prevail over the former and will be considered an exception to the general statute."
Thus it is the opinion of this court that the Veterans' Tenure Act, N.J.S.A. 38:16-1 et seq., is not applicable in the instant case and that it affords no protection to the plaintiff.
However, an examination of the law relating to the prevailing statute indicates that the plaintiff was entitled to some type of hearing before being discharged for "cause." It is true that the statute by its terms does not set out in detail a right to be served with written charges, or a right to a fair, impartial hearing where plaintiff could be represented by counsel as is contained in other statutes such as the Veterans' Tenure Act, N.J.S.A. 38:16-1 et seq. the Civil Service statute, N.J.S.A. 11:22-38 et seq. or the Teachers' Tenure Act, N.J.S.A. 18:13-16 et seq.
However, in Haight v. Love, 39 N.J.L. 14 (Sup. Ct. 1876), affirmed 39 N.J.L. 476 (E. & A. 1877), the court said:
"The section under which the defendant was appointed, gave the board power to remove `for cause.' The cause intended is just cause, and the power may be exerted only after the officer has had opportunity for defence. Such has been the well-settled law since the resolutions in Bagg's case, 11 Rep. 93, corrected and so established by Lord Mansfield's opinion in Rex v. Richardson, 1 Burr 517."
*162 See also Ayers v. Newark, 49 N.J.L. 170 (Sup. Ct. 1886); Bowlby v. Dover, 68 N.J.L. 97 (Sup. Ct. 1902); 99 A.L.R. 354.
In the case sub judice, the plaintiff was never told that he would have a right to a hearing before the Director and an opportunity to offer a defense to any charges which might be made against him. From the brief submitted and the oral argument the defendant apparently takes the position that the plaintiff was not entitled to a hearing or to an opportunity to defend himself against any charges which might be made against him. His position seems to be that he had a right to arbitrarily dismiss the plaintiff upon notifying him in writing of the reasons for said dismissal without any type of hearing or an opportunity for defendant to defend himself.
In the opinion of this court the plaintiff was entitled to a hearing and an opportunity to defend himself. An arbitrary dismissal as threatened by the Deputy Director constituted a wrongful act.
It is the finding of this court on the evidence presented that the plaintiff signed his letter of resignation only after duress was imposed upon him involving a wrongful act on the part of the defendant and inducing the plaintiff to sign such resignation under the influence of such fear as precluded him from exercising his free will and judgment.
It is the opinion of this court that the resignation must be set aside and held void as a product of duress.
The refusal on the part of the defendant to reinstate the plaintiff thereafter upon demand, and his subsequent action in removing plaintiff from the payroll on October 2, 1959 constituted a wrongful discharge.
The final question for determination is whether or not the plaintiff is entitled to be paid his salary from October 1, 1959, when the discharge became effective. This question turns upon the status of the plaintiff.
If he was an "employee" as distinguished from a "public officer" he would be entitled to be reimbursed for his back *163 pay less any sum which he actually earned or could have earned since his dismissal. Miele v. McGuire, 31 N.J. 339, 352 (1960). If he was a "public officer" then under our existing law he would not be entitled to reimbursement. De Marco v. Board of Chosen Freeholders of Bergen County, 21 N.J. 136 (1956).
As before stated plaintiff was appointed an investigator by the defendant under the provisions of N.J.S.A. 33:1-4(d). The statute provides that an investigator shall have authority to arrest, without warrant, for violations of said chapter committed in his presence and "shall have all the authority and powers of peace officers to enforce this chapter." In addition it is provided that investigators shall have full authority to conduct an investigation ordered by the commissioner.
In the leading case of Mayor, etc. of City of Hoboken v. Gear, 27 N.J.L. 265 (Sup. Ct. 1859) the court pointed out that the test of whether the appointee held a public office was whether he was "concerned in the administration of public duties"; that his appointment to public office was "neither a contract between the public and the officer that the service shall continue during the designated term, nor that the salary shall not be changed during the term of office"; and that his right to compensation grew "out of the rendition of the services, and not out of any contract between the government and the officer that the services shall be rendered by him." In Fredericks v. Board of Health, 82 N.J.L. 200 (Sup. Ct. 1912) the court stated, at page 201:
"An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties."
In Fredericks, supra, the court states that a "position" differs from an office in that its duties may be non-governmental and not assigned to it by any public law of the State, while an "employment" differs from both an office and a position, in *164 that its duties, which are non-governmental, are neither certain nor permanent.
In Duncan v. Board of Fire &c. Com'rs., 131 N.J.L. 443 (Sup. Ct. 1944) the court said:
"The test of a public office is whether the incumbent is `concerned in the administration of public duties?' `Is he invested with any portion of political power partaking in any degree in the administration of civil government, and performing duties which flow from the sovereign authority? If so, his office is a public office.'"
See Hillel v. Borough of Edgewater, 106 N.J.L. 481 (E. & A. 1930).
It seems quite clear that the plaintiff must be classified as a "public officer" and not the holder of a position or mere employment. His duties are clearly "governmental," and "public" in character. They are concerned with the effectuation of governmental policies or programs; partaking in the governmental process in the sense of sharing in the functions of sovereign power. See Glasser, "A New Jersey Municipal Law Mystery: What is a Public Office?" 6 Rutgers L. Rev. 503, 505 (1952). Certainly he falls within the category of police officers (Duncan v. Bd. of Fire &c. Com'rs., supra); county detectives (De Marco v. Board &c. Bergen County, supra); firemen (Fitzpatrick v. City of Passaic, 105 N.J.L. 103 (Sup. Ct. 1928), affirmed 105 N.J.L. 632 (E. & A. 1929).
Under the doctrine of Hoboken v. Gear, supra; Stuhr v. Curran, 44 N.J.L. 181 (E. & A. 1882); Hillel v. Borough of Edgewater, supra; De Marco v. Board &c. Bergen County, supra (see cases cited at page 140 of that opinion in 21 N.J.), and many others, a public officer cannot recover for back pay when he has not rendered services therefor. And this is so even though the officer was prevented from working through no fault of his own. Sganga v. Teaneck Township, 130 N.J.L. 218 (Sup. Ct. 1943); De Marco v. Board etc. Bergen County (supra, 21 N.J., at page 142). His sole opportunity for repayment must be based upon statutory authority so provided by the Legislature.
*165 On the basis of the foregoing decisions of our courts and the lack of statutory authority it is my opinion that the plaintiff, as a public officer of the State, cannot recover salary lost resulting from the defendant's action. Whatever injustice may appear to result from this holding can be remedied only by the Legislature and not by the courts.
In view of the finding of this court that the resignation of September 16, 1959 was procured from the plaintiff through duress and that the refusal of the defendant to restore him to duty was an unlawful dismissal, judgment will be entered directing the defendant to reinstate the plaintiff to his position as an investigator in the Division of Alcoholic Beverage Control forthwith. That portion of plaintiff's action which seeks payment of salary for the period of discharge will be denied.
A judgment may be presented in accordance with these conclusions.
Without cost.