FLORENCE S. EVAUL, PETITIONER-APPELLANT, v. BOARD OF EDUCATION OF THE CITY OF CAMDEN, DEFEND-ANT-RESPONDENT.

Argued May 9, 1961—Decided June 30, 1961.

*Mr. Meyer L. Sakin* argued the cause for the petitioner-appellant.

*Mr. A. Donald Bigley* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

PROCTOR, J.    Appellant, Florence Evaul, is a former Camden public school teacher.   Her employment with the Camden school system was terminated on March 13, 1959, when the respondent Board of Education accepted her alleged offer to resign.   On her successive appeals, the Commissioner of Education, the State Board of Education, and the Appellate Division (65 *N. J. Super.* 68 (1961)) upheld the validity of her release.   Since one judge of the Appellate Division dissented, she appeals to this court as of right. *R. R.* 1:2–1(b).

The facts necessary to understand how and why appellant's employment was terminated are as follows:

Miss Evaul was a teacher in the Camden school system from 1934 to March 13, 1959.   In 1937 she acquired tenure, see *N. J. S. A.* 18:13–16, and, in due course, seniority and pension rights.   During her twenty-five years of service no charges were ever preferred against her; nor was she ever suspended.

For some time prior to her release, Miss Evaul taught English at Woodrow Wilson High School.   The record does not clearly disclose the nature of her relationship with other faculty members.   She testified before the Commissioner that she never had any serious clashes or disputes with colleagues.   On the other hand, the school Principal testified that she did.   It is clear that appellant believed she was overloaded with work; for at some point she complained to the Superintendent of Schools and the President of the Board of Education about the extent of her curricular and extra-curricular duties.

On the morning of March 13, 1959, appellant informed her department head that fellow teachers who were preparing a departmental notebook were not reporting the activities of appellant's pupils.   The department head replied, in effect, that the others were at least undertaking a chore which appellant had declined.   Appellant said she was sorry she could not assist because of her heavy program, and that

the Superintendent and President had asked why the department head did not provide appellant with assistance. With that, the department head began to cry and said, "You have certainly put me in a position" (apparently implying that appellant's request to the school officials had adversely reflected upon the department head's performance of her duties). Later in the morning, appellant sent a note to the department head which read as follows:

"Grace,                                                                       3/13/59:
    Just one thing. I was as amazed as you are that the Bd Pres. & Supt. should have expected you to do something to help me. Ordinarily, I get help from no one. But, more important I did not bring up anything about you.
                                                                            Florence
    I have appreciated your sympathy *but* I need help."

Miss Evaul testified that the purpose of the above note was to apologize and to make clear that she did not mention the department head's name to the President and Superintendent. The department head gave the note to the Principal, and he, in turn, sent a note to the appellant directing her to report to his office.

When appellant arrived at the Principal's office, she was confronted by the Principal, the President and the Superintendent. What happened next is unclear; but all four persons testified that everyone was talking at the same time. The meeting, which lasted about forty minutes, was heated and acrimonious. Appellant was charged by one or the other of the school officials with being argumentative, uncooperative, insubordinate, disrespectful, and hypercritical. The record reveals that during the meeting she appeared nervous, excited and distraught; that at one point she cried; that at other times she was calm; and at still other times angry. At one point she responded to an accusation with "that's a lie." After appellant left the Principal's office she supervised a study period. She testified that during this time she was "dazed" and didn't "remember anything but walking up and down the aisles"; she was "shocked" by what had

happened and felt "discouraged" that she "couldn't convince" those at the meeting "that there had been nothing wrong." At the end of the study period, she sought a conference with the Principal, but learned that he had left the building. She testified that at this point she was crying and telephoned her doctor who advised her to go home. Instead of going home, she went to the office of the President of the Board. He refused to discuss the subject matter of the earlier meeting, and told her to speak with the Superintendent.

Miss Evaul arrived at the Superintendent's office at about 4:00 P. M. She said to the Superintendent, "I can't take any more of this and I have a few thousand, I'll resign." He told her not to be hasty, to think it over, and at least to wait until Monday (March 16th). She responded, "If I do, I'll change my mind." The Superintendent testified that he told her five times to think over her decision. When asked why, he testified, "I didn't think she meant it." The appellant apparently persevered; for the Superintendent provided her with a piece of paper and left. She then wrote the following note, placed it on the secretary's desk, and departed:

"Mr. A. R. Catrambone,                    March 13, 1959.
    Because it seems impossible to resolve the *false* accusations, the misunderstandings, the attacks on my reputation (*not* my character), and the constant references to ridiculous stories of my past history, *I hereby offer my resignation* from the Camden School System. No one seems interested in clearing up these matters.
                      Sincerely yours,
                                Florence Smith Evaul"

Appellant testified that during her conversation with the Superintendent, she was "too vague and disturbed, discouraged to even bother with time." But she also said that her mind was clear; that she alone chose the words appearing in her alleged resignation; and that she "was offering a resignation which could have been accepted or rejected,

hoping that it would bring up a discussion before the Board * * *."

Appellant was unaware that a special meeting of the school board had previously been scheduled to take place at 8:00 P. M. on March 13—a few hours after she left her alleged resignation with the Superintendent. The meeting was held as scheduled. After other business was transacted, the Superintendent, when called upon for his report, said:

"Mr. Chairman, I have been handed the resignation of Florence Smith Evaul. I recommend to the Board of Education that this resignation be accepted, to take effect on the date of her letter, March 13, 1959."

One member moved acceptance of appellant's resignation; the motion was seconded; and, without discussion, it was unanimously adopted.

On March 14, 1959 appellant read in the local paper that a special meeting of the Board of Education took place the night before. She called the Board Secretary, and he told her that her resignation had been accepted. The following evening, March 15, 1959, she visited the home of the Superintendent to see what she could do about rescinding her resignation. She testified that after the meeting the Superintendent would do nothing to help her. Later in the evening, she sent telegrams to the Superintendent, the President of the Board, and the Board in care of the Secretary, informing them she was rescinding her resignation. On the morning of March 16, 1959, the Secretary, upon receipt of the telegram, immediately wrote to the Superintendent informing him that he had received the telegram and that "Miss Evaul went off the payroll on Friday, March 13, 1959 at the end of the school day, as her resignation was offered and accepted by the Board before receipt of the telegram of recision." He instructed the Superintendent to "handle payroll accordingly." Later that morning the Superintendent sent Miss Evaul the following telegram:

"Your night letter received this morning since the Board accepted your resignation dated March 13 at its meeting on March 13 1959 the resignation is in effect and there is no further action to be taken by this office."

Appellant asks us to reverse the judgment below and order her reinstatement on a number of grounds. Our view of this case is related to her argument that the resignation was invalid because her offer to resign was the product of duress. As will appear hereinafter, our disposition of this appeal makes it unnecessary for us to discuss appellant's other arguments.

Although the record does not disclose any conduct by the school officials which amounts to duress, *cf. Rubenstein v. Rubenstein*, 20 *N. J.* 359 (1956); *Gobac v. Davis*, 62 *N. J. Super.* 148 (*Law Div.* 1960), we think that the peculiar circumstances of this case require the reinstatement of the appellant on equitable principles. It was an extraordinary concatenation of events which resulted in a loss to appellant of her tenure, seniority and pension rights acquired during twenty-five years of service. First, there were the disturbing incidents of March 13, 1959, which led to the submission of her resignation. The unpleasant and emotional meeting with her department head was shortly followed by the unanticipated and tempestuous confrontation in the Principal's office. It is reasonable to suppose that the anxiety and distress engendered by these incidents reached a climax when her subsequent efforts to confer with the Principal and the President of the School Board were frustrated. It is clear to us that the submission of her resignation was an impetuous act prompted by her understandably distraught condition. The emotionally-charged words she used in her note of resignation bear this out. Second, linked to the above chain of events, was the fortuitous circumstance that a special meeting of the school board had, unknown to her, previously been scheduled for a few hours after she wrote her resignation. But for that happenstance, her attempted rescission, on March 15, 1959, would have been effective.

In view of the above facts, we think that, in the unusual circumstances of this case, it is unduly harsh for appellant to lose rights acquired during the many years she served as a teacher in the Camden school system. This is particularly so, in light of the additional fact that in the interim between the acceptance of her resignation and appellant's prompt attempt to rescind, the school board did not take any action in reliance upon the effectiveness of her release. Accordingly, we hold that the appellant must be reinstated.

The appellant has not asked for back salary in this appeal. To avoid later litigation, however, we hold that because the loss of her teaching position was occasioned by her own impetuous conduct and her reinstatement is based upon equitable principles, she is not entitled to collect her salary for the period dating from the acceptance of her resignation until her reinstatement.

The judgment of the Appellate Division is reversed and the cause is remanded to the Board of Education for proceedings consistent with this opinion.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.